PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-1839

WESTMORELAND COAL COMPANY, INCORPORATED,

Petitioner,

v.

JARRELL D. COCHRAN; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR;
DEPARTMENT OF LABOR; BENEFITS REVIEW BOARD,

Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(10-0522-BLA)

Argued: March 22, 2013                    Decided: June 4, 2013

Before TRAXLER, Chief Judge, and MOTZ and WYNN, Circuit Judges.

Petition for review denied by published opinion. Judge Wynn
wrote the majority opinion, in which Judge Motz joined. Chief
Judge Traxler wrote a dissenting opinion.

**ARGUED:** Thomas Michael Hancock, BOWLES RICE, LLP, Charleston,
West Virginia, for Petitioner. Ryan Christopher Gilligan,
WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS, Norton, Virginia;
Jeffrey Steven Goldberg, UNITED STATES DEPARTMENT OF LABOR,
Washington, D.C., for Respondents. **ON BRIEF:** Paul E. Frampton,
BOWLES RICE, LLP, Charleston, West Virginia, for Petitioner.
Joseph E. Wolfe, WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS, Norton,
Virginia, for Respondent Jarrell D. Cochran. M. Patricia Smith,
Solicitor of Labor, Rae Ellen Frank James, Associate Solicitor,

Gary K. Stearman, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondents.

WYNN, Circuit Judge:

Westmoreland Coal Company, Inc. challenges an Administrative Law Judge's ("ALJ") decision, affirmed by the Benefits Review Board (the "Board"), to award black lung benefits to Westmoreland's former employee, Jarrell Cochran. Because the award of benefits is supported by the record and accords with applicable law, we must deny Westmoreland's petition for review.

I.

The Black Lung Benefits Act (the "Act"), 30 U.S.C. § 901 *et seq.*, entitles former coal miners totally disabled by pneumoconiosis—commonly called black lung disease—to benefits. The Act's implementing regulations define "pneumoconiosis" as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment."  20 C.F.R. § 718.201(a).

"[P]neumoconiosis can take two forms": "clinical" pneumoconiosis and "legal" pneumoconiosis. Harman Min. Co. v. Dir., Office of Workers' Comp. Programs, 678 F.3d 305, 308 (4th Cir. 2012).  "Clinical" pneumoconiosis "consists of those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the

3

fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1). "Legal" pneumoconiosis is "significantly broader than the medical definition," Hobbs v. Clinchfield Coal Co., 45 F.3d 819, 821 (4th Cir. 1995), and includes "any chronic lung disease or impairment . . . arising out of coal mine employment . . . includ[ing] . . . any chronic restrictive or obstructive pulmonary disease," 20 C.F.R. § 718.201(a)(2). For purposes of the Act, "arising out of coal mine employment" means "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b).

A claimant under the Act can establish pneumoconiosis with the aid of a regulatory presumption of pneumoconiosis, id. § 718.305(a), or with evidence including x-rays, biopsies, and medical opinions from physicians "exercising sound medical judgment, notwithstanding a negative X-ray," id. § 718.202. "[T]o determine whether a preponderance of *all* of the evidence establishes the existence of pneumoconiosis," ALJs must consider all the relevant evidence together. Island Creek Coal Co. v. Compton, 211 F.3d 203, 208 (4th Cir. 2000).

## II.

For at least sixteen years between 1964 and 1995, Cochran worked in West Virginia coal mines, most recently for

4

Westmoreland.  At the mines, Cochran had various jobs—above and below ground—working as a roof bolter, mechanic, shuttle car operator, general laborer, and truck driver. Cochran also has a history of smoking, approximately one pack of cigarettes per week for twenty years.

In February 2008, Cochran filed this claim for black lung benefits.[1]  The Department of Labor awarded benefits, payable by Westmoreland, and Westmoreland requested a formal hearing before an ALJ.

In November 2009, the ALJ conducted a hearing on Cochran's claim.  And in May 2010, the ALJ issued a detailed decision awarding Cochran benefits.  The ALJ found that the evidence failed to establish that Cochran suffers from clinical pneumoconiosis but did establish that Cochran suffers from legal pneumoconiosis.  Regarding this legal pneumoconiosis finding, the ALJ chose to credit Dr. D. L. Rasmussen's medical opinion over the opinions of Dr. George L. Zaldivar and Dr. Kirk E. Hippensteel, explaining that the latter two "primarily concentrated on explaining why . . . the miner did not suffer from clinical pneumoconiosis"—which does not preclude legal pneumoconiosis—and that their conclusions were "inconsistent

---

[1] Cochran previously filed a claim for benefits in 1995; that claim was denied.

5

with the scientific evidence set forth" in the Preamble of the Act's implementing regulations.[2] J.A. 379. Further, the ALJ found that Cochran is totally disabled as a result of his pneumoconiosis, and thus awarded Cochran black lung benefits.

Westmoreland appealed to the Board, and in June 2011, the Board concluded that the ALJ permissibly used the Preamble to evaluate conflicting medical opinions about the cause of Cochran's disability and that substantial evidence supported the ALJ's ultimate finding of legal pneumoconiosis.[3] Accordingly, the Board affirmed the ALJ's decision and order awarding benefits. Westmoreland now petitions this Court for review.

III.

In black lung benefits cases, this Court's "review of the Board's order is limited." Harman, 678 F.3d at 310 (internal quotations omitted). We review "whether substantial evidence"—i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,]" Consolid. Edison Co. of NY v. NLRB, 305 U.S. 197, 229 (1938)—"supports the factual

---

[2] "The preamble . . . sets forth the medical and scientific premises relied on by the Department" of Labor when it amended the black lung benefits regulations to revise the definition of legal pneumoconiosis. Harman, 678 F.3d at 314.

[3] Westmoreland did not appeal the ALJ's finding that Cochran suffers from a totally disabling respiratory impairment.

6

findings of the ALJ and whether the legal conclusions of the [Board] and ALJ are rational and consistent with applicable law," Harman, 678 F.3d at 310 (internal quotations omitted). "As long as substantial evidence supports an ALJ's findings, '[w]e must sustain the ALJ's decision, even if we disagree with it.'" Id. (quoting Smith v. Chater, 99 F.3d 635, 637–38 (4th Cir. 1996)). We are not at liberty to "substitute our judgment for that of the ALJ" but rather must "defer to the ALJ's evaluation of the proper weight to accord" the evidence, including "conflicting medical opinions." Id. (quotation marks omitted).

On appeal, Westmoreland argues that: (1) the evidence derived from Dr. Rasmussen's testimony was insufficient to support the ALJ's finding of legal pneumoconiosis; (2) the ALJ failed to consider all the relevant evidence by improperly discounting certain expert opinions; and (3) the ALJ erroneously interpreted the Preamble to create an irrebuttable presumption of pneumoconiosis. We address each argument in turn.

IV.

A.

We turn first to Westmoreland's contention that Dr. Rasmussen's testimony was insufficient to support the ALJ's finding of legal pneumoconiosis. Specifically, Westmoreland

7

compares Dr. Rasmussen's testimony here to his testimony in another black lung case, United States Steel Mining Co., Inc. v. Director, Office of Workers' Compensation Programs, 187 F.3d 384 (4th Cir. 1999) ("Jarrell"), in which this Court found that the evidence in the record was insufficient to support an award of benefits.

In Jarrell, the ALJ had awarded survivor benefits to a claimant "relying solely" on Dr. Rasmussen's testimony that "[i]t is possible that [the coal miner's] death could have occurred as a consequence of his pneumonia superimposed upon his chronic lung disease, including his occupational pneumoconiosis and occupationally related emphysema" and "[i]t can be stated that [the coal miner's] occupational pneumoconiosis was a contributing factor to his death." Id. at 387, 389 (emphasis added). This Court reversed, holding that the mere possibility of causation was insufficient to support finding a nexus between a claimant's pneumoconiosis and his death.

Here, by contrast, Dr. Rasmussen did not testify that coal mine dust or cigarette smoke could be the cause of Cochran's respiratory impairment. Nor did he testify that he did not know or could not tell whether coal mine dust contributed to Cochran's respiratory impairment. Rather, Dr. Rasmussen testified that both coal mine dust and cigarette smoke were causes, affirmatively asserting "Mr. Cochran's coal mine dust

8

exposure must be considered a significant contributing factor to his what should be described as overlap syndrome . . . and that he does have at least legal pneumoconiosis, i.e. COPD/emphysema caused in significant part by coal mine dust exposure."  J.A. 39.

Dr. Rasmussen stated that the effects of coal mine dust and cigarette smoke exposure "are independent, but additive[,] with those smokers or non-smokers who are exposed to the greatest amount of dust exhibit[ing] the greatest impairment."  J.A. 38. And as the ALJ correctly explained, the Act does not require that coal mine dust exposure be the sole cause of a claimant's respiratory impairment.  See 20 C.F.R. § 718.201(b) (defining "arising out of coal mine employment" as "significantly related to, or substantially aggravated by, dust exposure in coal mine employment"); see also Consolidation Coal Co. v. Swiger, 98 F. App'x 227, 238 (4th Cir. 2004) (affirming award of black lung benefits in case in which experts "found that [claimants]'s disability was caused in part by smoking and conceded that it was difficult to differentiate between the effects caused by smoking and the effects caused by coal mine dust").

Given Dr. Rasmussen's expert opinion, the ALJ's conclusion that Cochran's "COPD/emphysema [is] due in part to coal mine dust exposure" was supported by substantial evidence.  J.A. 379.

Thus, the Board did not err in affirming the ALJ's finding of legal pneumoconiosis.

B.

Westmoreland also argues that the ALJ erred by improperly discounting the opinions of Dr. Zaldivar and Dr. Hippensteel in favor of Dr. Rasmussen's. Specifically, in deciding to credit Dr. Rasmussen's opinion over Dr. Zaldivar's and Dr. Hippensteel's, the ALJ stated that

> much of the pertinent dispute between these medical experts centers on the etiology of the miner's emphysema. In this particular regard, the opinions of Drs. Hippensteel and Zaldivar are inconsistent with the scientific evidence set forth in the [Act's] Preamble . . . Thus, I give their opinions concerning the etiology of the miner's emphysema less credit than Dr. Rasmussen's.

J.A. 379. Westmoreland contends that the ALJ erred by misinterpreting the Preamble and discrediting the testimony of Dr. Zaldivar and Dr. Hippensteel. We disagree.

The Preamble states, in pertinent part, that medical literature "support[s] the theory that dust-related emphysema and smoke-induced emphysema occur through similar mechanisms . . . ." Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, 65 Fed. Reg. 79920, 79943 (Dec. 20, 2000). In Harman, a recent, very similar black lung case, this Court made plain that an ALJ may consider the Act's Preamble in

10

assessing medical expert opinions. Harman, 678 F.3d at 314–15. We also noted that "the only other circuits to address the question have upheld an ALJ's invocation of the same preamble." Id. at 315 (citing Helen Mining Co. v. Dir., O.W.C.P., 650 F.3d 248, 256 (3d Cir. 2011) (noting that "[t]he ALJ gave less weight" to the opinions of an employer's expert because it was "inconsistent with 20 C.F.R. § 718.202(a)(1)-(4) and with the preamble to the regulations"); and Consolidation Coal Co. v. Dir., O.W.C.P., 521 F.3d 723, 726 (7th Cir. 2008) (describing as "sensible" the ALJ's decision to give little weight to the opinion of employer's expert because, in part, it conflicted with the Preamble's statements on the clinical significance of coal dust-induced COPD)).

Nevertheless, Westmoreland argues that the ALJ misinterpreted the Preamble to mean that smoke-induced and coal mine dust-induced respiratory impairments always are indistinguishable. According to Westmoreland, Dr. Zaldivar and Dr. Hippensteel relied on advancements in science and medicine since the implementation of the Preamble that purportedly facilitate the differentiation of coal mine dust-induced and smoke-induced emphysema, which the ALJ supposedly ignored because of how he interpreted the Preamble. In so arguing, Westmoreland overstates the ALJ's reliance on the Preamble.

11

Indeed, the ALJ did not state that he would not consider Dr. Zaldivar's and Dr. Hippensteel's opinions, nor did he suggest that he was obligated to accept the scientific studies in the Preamble over any other evidence. Rather, the ALJ explained that he chose to give Dr. Rasmussen's opinion more weight in part because it aligned with the scientific findings in the Preamble. And neither Dr. Zaldivar nor Dr. Hippensteel testified as to scientific innovations that archaized or invalidated the science underlying the Preamble. In fact, only Dr. Zaldivar cited literature that post-dates the Preamble—none of which appears to even discuss the effects of coal mine dust exposure on the lungs.

Moreover, the ALJ did not rely solely on the Preamble for giving less weight to Dr. Zaldivar's and Dr. Hippensteel's opinions. Rather, the ALJ discredited their opinions also because both experts "primarily concentrated on explaining why they believed the miner did not suffer from clinical pneumoconiosis and why clinical pneumoconiosis was not responsible for his symptoms or impairment" without addressing legal pneumoconiosis. J.A. 379. The evidence in the record bears this out: For example, when Dr. Hippensteel was asked "why do you think that Mr. Cochran's problem is asthma as opposed to legal pneumoconiosis," he replied "there is no specific association between coal mine dust exposure and the

12

development or causation of asthma . . . . It has not been associated with any other findings that would suggest that he had developed clinical pneumoconiosis . . . ." J.A. 175.

The ALJ agreed with Dr. Hippensteel and Dr. Zaldivar that Cochran does not suffer from clinical pneumoconiosis. But the Preamble and regulations make clear that the absence of clinical pneumoconiosis cannot be used to rule out legal pneumoconiosis. Here, the ALJ found these experts' opinions had less probative value with regard to whether Cochran has legal pneumoconiosis, the salient diagnosis for awarding benefits here. Thus, the ALJ provided an alternate basis sufficient to uphold his weighing of the evidence even if his use of the Preamble were error—although we conclude that it was not. See Harman, 678 F.3d at 313 ("[E]ven if we were to agree . . . that the ALJ's invocation of the preamble in discrediting [an expert's] opinion was improper (which we do not), any such error would likely be harmless because the ALJ provided [] independent reasons . . . for dismissing [the] opinion.").

Ultimately, as the ALJ explained, Cochran's claim reduces to a case of conflicting medical opinions, i.e., a "battle of the experts." It is the role of the ALJ—not the appellate court—to resolve that battle. E.g., Harman, 678 F.3d at 310. The ALJ's lengthy, detailed order reveals a careful consideration of the experts' qualifications, their opinions,

13

and the underlying medical science. The order also explains why the ALJ chose to give Dr. Rasmussen's opinion more weight. Nothing before us indicates that the ALJ "substitute[d] his own medical opinion" for those of Dr. Zaldivar and Dr. Hippensteel, Reply Br. at 61, or otherwise committed reversible error. Nor may we substitute our own judgment for the ALJ's and reweigh the evidence. Accordingly, we conclude that the Board properly affirmed the ALJ's finding that Cochran suffers from legal pneumoconiosis.

C.

Finally, Westmoreland contends that the ALJ erroneously placed the burden of proof on Westmoreland to rule out coal mine dust as a cause of Cochran's respiratory impairment. In particular, Westmoreland cites to a single sentence in the ALJ's order stating that "it is not established that coal dust did not aggravate [Cochran's] asthma." J.A. 379. Westmoreland takes this sentence out of context.

Indeed, reading the decision and order as a whole, it is clear that this was not a statement of the ALJ's view as to the claimant's burden or the sufficiency of the evidence. Rather, this was simply part of the ALJ's explanation for why he chose not to credit the opinions of Dr. Hippensteel and Dr. Zaldivar regarding the cause of Cochran's condition. Elsewhere in the

14

order, the ALJ clearly stated "[t]he claimant has the burden of proving the existence of pneumoconiosis[,]" J.A. 372, and recognized that the claimant bears the "burden of proof in establishing the existence of 'legal' pneumo-coniosis." J.A. 379. Accordingly, we hold that ALJ properly placed the burden of proof on Cochran to establish the existence of legal pneumoconiosis.

V.

In sum, the ALJ's decision and order to award benefits was supported by substantial evidence, rational, and consistent with applicable law. The Board therefore did not err in affirming the ALJ's decision and order, and we accordingly deny Westmoreland's petition for review.

<u>PETITION FOR REVIEW DENIED</u>

TRAXLER, Chief Judge, dissenting:

With respect, I dissent. In my opinion, the ALJ's decision to award benefits is not supported by substantial evidence, and the ALJ erred in shifting the burden to Westmoreland to disprove pneumoconiosis. I also believe the ALJ erred in discrediting the opinions of Drs. Zaldivar and Hippensteel based upon the language in the Preamble.

I.

Highlighting generic findings and general statistics regarding the physiological effects of coal dust exposure and cigarette smoking, and based upon a perceived inability to distinguish between diseases and symptoms caused by them, Dr. Rasmussen summarily concluded that "Cochran's coal mine dust exposure must be considered a significant contributing factor to" his pulmonary condition. J.A. 39. The conclusion contains the requisite words, but the underlying basis rests in mere speculation and possibilities. See J.A. 39 ("While it is theoretically possible that all of Mr. Cochran's impairment and lung damage is the consequence of cigarette smoking, it is also theoretically possible it is all due to coal mine dust exposure."); id. (Cochran's condition "could be caused by both asthma and toxic effects of smoking and coal mine dust."); id. ("We have no basis for excluding either" as a cause.).

16

Apparently accepting the view that neither theoretical cause could be ruled out as a contributing one, the ALJ then compounded the error by imposing upon the employer the burden of proving that coal dust exposure was <u>not</u> a contributing cause, finding that:

> it [was] not established that coal dust did <u>not</u> <u>aggravate[]</u> [Cochran's] asthma. I note, in particular, Dr. Hippensteel's admission on cross-examination that coal dust <u>could</u> aggravate one's asthma. Dr. Zaldivar explained that coal mine dust "<u>can</u> cause physiological changes that are eventually indistinguishable from emphysema."

J.A. 379 (emphasis added).

This is not a valid basis for awarding benefits. <u>See</u> <u>United States Steel Mining Co. v. Dir., OWCP</u>, 187 F.3d 384, 390 (4th Cir. 1999) ("<u>Jarrell</u>") (rejecting as insufficient a similarly speculative opinion offered by Dr. Rasmussen - that it was "'possible that death could have occurred as a consequence of [the miner's] pneumonia superimposed upon ... his occupational pneumoconiosis' and therefore '[i]t c[ould] be stated that [the miner's] occupational pneumoconiosis was a contributing factor to his death'" (emphasis omitted)); <u>Peabody</u> <u>Coal Co. v. Smith</u>, 127 F.3d 504, 507 (6th Cir. 1997) (A "miner's pneumoconiosis must be more than merely a speculative cause of his disability" before an ALJ can award benefits). In the absence of x-rays, a biopsy, or a valid regulatory presumption, the burden rests squarely upon the miner to prove by a reasoned

17

medical opinion that his coal mine dust exposure significantly contributed to or substantially aggravated his chronic obstructive pulmonary disease. Dr. Rasmussen's opinion fails to rise to the requisite standard and the ALJ, in consequence, improperly shifted the burden to the employer to disprove that Cochran suffered from legal pneumoconiosis. Accordingly, I would reverse the award of benefits.

## II.

Even if I were to consider Dr. Rasmussen's opinion as sufficiently reliable and probative on the issue, I believe the ALJ additionally erred in discrediting the opinions of Drs. Hippensteel and Zaldivar based upon the language in the Preamble.

The Preamble intended to make clear that obstructive lung diseases (such as chronic obstructive pulmonary disease and emphysema) can fall within the legal definition of pneumoconiosis, but only if the claimant can satisfy his burden of proving that the pulmonary condition was significantly related to or substantially aggravated by coal dust exposure:

> The Department attempts to clarify that not all obstructive lung disease is pneumoconiosis. It remains the claimant's burden of persuasion to demonstrate that his obstructive lung disease arose out of his coal mine employment and therefore falls within the statutory definition of pneumoconiosis.

18

65 Fed. Reg. 79920-01, 79923; see also 65 Fed. Reg. 79920-01, 79938 ("The revised definition will eliminate the need for litigation of this issue on a claim-by-claim basis, and render invalid as inconsistent with the regulations medical opinions which categorically exclude obstructive lung disorders from occupationally-related pathologies.  The Department reiterates, however, that the revised definition does not alter the former regulations' requirement that each miner bear the burden of proving that his obstructive lung disease did in fact arise out of his coal mine employment, and not from another source." (emphasis added) (internal citation omitted)).

Consistent with the conclusion that coal dust exposure can cause obstructive lung disease, the Preamble also notes medical studies that "support the theory that dust-induced emphysema and smoke-induced emphysema occur through similar mechanisms." id. at 79943 (emphasis added).  However, while the Preamble recognizes that the mechanisms by which smoke and coal mine dust cause lung destruction are similar, it does not state that the mechanisms or "the signs and symptoms [are] identical", J.A. 39, as Dr. Rasmussen opined, J.A. 39, or that the causes of an obstructive pulmonary disease (smoking and/or coal dust exposure and/or asthma) cannot be determined or ruled out by a qualified physician.  If that were the case, no physician could ever rule out any degree of coal dust exposure as a significant

19

contributing cause of an obstructive pulmonary disease, and the Preamble would effectively become an irrebuttable presumption that coal dust exposure, if it is proven, must be considered to have significantly caused or substantially aggravated the pulmonary condition because no one could rule it out. Taking the language of the Preamble at face value, it is clear to me that the opinions of Drs. Zaldivar and Hippensteel are not inconsistent with the Preamble's findings.

This case is also distinguishable from Harman, wherein we upheld the decision of an ALJ discrediting a physician's opinion as inconsistent with the Preamble. The physician in that case "based [his] conclusion, in part, on his opinion that legal pneumoconiosis 'cannot' cause obstructive pulmonary disease." Harman Mining Co. v. Dir., OWCP, 678 F.3d 305, 311 (4th Cir. 2012) (emphasis added). We also upheld the ALJ's decision to discredit a second physician's opinion because he "improperly believed that pneumoconiosis cannot cause disability in the absence of a positive x-ray," another categorical rejection of the DOL's conclusions in the Preamble. Id. at 311-12 (emphasis added) (internal quotation marks omitted). The opinions of Drs. Zaldivar and Hippensteel, in contrast, are not categorical rejections of the premise that chronic obstructive pulmonary disease can be caused or aggravated by coal dust exposure, or

20

that pneumoconiosis cannot exist in the absence of a positive x-ray finding.

Finally, the ALJ's conclusion that the opinions of Drs. Zaldivar and Hippensteel should be discredited because they focused more on clinical than legal pneumoconiosis also finds no support in the record. When the evaluations were conducted by Drs. Zaldivar and Hippensteel, Dr. Rasmussen had diagnosed <u>clinical</u> pneumoconiosis based upon his positive x-ray reading. It is not surprising, therefore, that Drs. Zaldivar and Hippensteel might likewise be focused more on addressing the diagnosis of clinical pneumoconiosis made by their colleague at the time. Nevertheless, both physicians addressed the then-alternative claim of legal pneumoconiosis, exhibited (as the ALJ acknowledged) a correct understanding of its distinction from clinical pneumoconiosis, and explained their rationales for rejecting both forms of pneumoconiosis.

Accordingly, because I believe the ALJ discredited the opinions of Drs. Zaldivar and Hippensteel on invalid bases, I would, at a minimum, vacate and remand the case for reconsideration in light of all of the medical evidence and pursuant to a proper interpretation of the Preamble.