<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 12-1866**

───────────

WESTMORELAND COAL COMPANY, INCORPORATED,

        Petitioner,

      v.

EDWARD L. STIDHAM; DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

        Respondents.

───────────

On Petition for Review of an Order of the Benefits Review Board.
(11-0588-BLA)

───────────

Argued:  December 12, 2013        Decided:  March 26, 2014

───────────

Before NIEMEYER, AGEE, and WYNN, Circuit Judges.

───────────

Petition for review denied by unpublished opinion.  Judge Wynn
wrote the opinion, in which Judge Niemeyer and Judge Agee
concurred.

───────────

**ARGUED:** Thomas Michael Hancock, BOWLES RICE, LLP, Charleston,
West Virginia, for Petitioner.  Ryan Christopher Gilligan,
WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS, Norton, Virginia;
Jeffrey Steven Goldberg, UNITED STATES DEPARTMENT OF LABOR,
Washington, D.C., for Respondents.  **ON BRIEF:** Paul E. Frampton,
BOWLES RICE, LLP, Charleston, West Virginia, for Petitioner.
Joseph E. Wolfe, WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS, Norton,
Virginia, for Respondent Edward L. Stidham.  M. Patricia Smith,
Solicitor of Labor, Rae Ellen Frank James, Associate Solicitor,
Gary K. Stearman, Counsel for Appellate Litigation, Office of

the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director, Office of Workers' Compensation Programs.

---

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Petitioner Westmoreland Coal Company, Inc. challenges a final decision and order of the United States Department of Labor Benefits Review Board (the "Board"), which awarded black lung benefits to Respondent Edward Stidham, a former Westmoreland employee. Stidham v. Westmoreland Coal Co., No. 11-0588 (BRB May 24, 2012) (unpublished) (the "BRB Opinion"). The Board affirmed a decision by the Administrative Law Judge ("ALJ") concluding that Stidham established total disability due to pneumoconiosis by use of a statutory presumption. The ALJ determined that Westmoreland failed to rebut the presumption and accordingly awarded benefits to Stidham. Stidham v. Westmoreland Coal Co., No. 2009-BLA-05117 (Dep't of Labor May 23, 2011) (the "ALJ Decision and Order"). We conclude that the Board did not err in affirming the ALJ's decision, which was supported by substantial evidence and accords with applicable law. Therefore, we deny Westmoreland's petition for review.

I.

Under the Black Lung Benefits Act (the "Act"), 30 U.S.C. § 901 et seq., former coal miners who are totally disabled by pneumoconiosis are entitled to receive monetary benefits. Pneumoconiosis, commonly called black lung disease, is defined as "a chronic dust disease of the lung and its sequelae,

3

including respiratory and pulmonary impairments, arising out of coal mine employment."  20 C.F.R. § 718.201(a).

Compensable pneumoconiosis "'can take two forms'": clinical and legal.  Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 320 (4th Cir. 2013) (quoting Harman Min. Co. v. Dir., Office of Workers' Comp. Programs, 678 F.3d 305, 308 (4th Cir. 2012)).  "'Clinical" pneumoconiosis' consists of those diseases recognized by the medical community as pneumoconiosis, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment."  20 C.F.R. § 718.201(a)(1).

Legal pneumoconiosis, by contrast, "is significantly broader than the medical definition of coal workers' pneumoconiosis."  Hobbs v. Clinchfield Coal Co., 45 F.3d 819, 821 (4th Cir. 1995).  "'Legal pneumoconiosis' includes any chronic lung disease or impairment . . . arising out of coal mine employment."  20 C.F.R. § 718.201(a)(2); see also id. § 718.203(a) ("In order for a claimant to be found eligible for benefits under the Act, it must be determined that the miner's pneumoconiosis arose at least in part out of coal mine employment.").  A chronic lung disease or impairment arises out of coal mine employment if it is "significantly related to, or

4

substantially aggravated by, dust exposure in coal mine employment." Id. § 718.201(b).

For claims filed after January 1, 2005, and pending on or after March 23, 2010, a claimant may establish pneumoconiosis by use of a statutory presumption.[1] 30 U.S.C. § 921(c)(4) (the "fifteen-year presumption"). To invoke the fifteen-year presumption, a claimant must establish that (1) the miner had fifteen years of qualifying coal-mine employment; (2) the miner or survivor cannot establish entitlement to benefits by use of chest x-ray evidence; and (3) the miner has, or had at the time of his death, "a totally disabling respiratory or pulmonary impairment[.]" Id. The opposing party may rebut the fifteen-year presumption by establishing that either: (1) the miner has neither legal nor clinical pneumoconiosis; or (2) the miner's "respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." Id.

"In black lung benefits cases, this Court's review of the Board's order is limited." Cochran, 718 F.3d at 322 (quotation marks omitted). We examine "whether substantial evidence supports the factual findings of the ALJ and whether the legal

---

[1] The Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010), reinstated this presumption, which had been abolished by the Black Lung Benefits Revenue Act of 1981, Pub. L. No. 97-119, § 202, 95 Stat. 1635, 1643 (1981).

5

conclusions of the [Board] and ALJ are rational and consistent with applicable law." Lewis Coal Co. v. Dir., Office of Workers' Comp. Programs, 373 F.3d 570, 575 (4th Cir. 2004). Substantial evidence "means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). "[I]t is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). If substantial evidence supports an ALJ's findings, "'[w]e must sustain the ALJ's decision, even if we disagree with it.'" Harman, 678 F.3d at 310 (quoting Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)).

Further, we "defer to the ALJ's evaluation of the proper weight to accord conflicting medical opinions." Stiltner v. Island Creek Coal Co., 86 F.3d 337, 342 (4th Cir. 1996). The ALJ is not required to accept the opinion of any medical expert but "must evaluate the evidence, weigh it, and draw his own conclusions." Underwood v. Elkay Mining, Inc., 105 F.3d 946, 949, (4th Cir. 1997), superseded on other grounds as stated in Elm Grove Coal Co. v. Dir., Office of Workers' Comp. Programs, 480 F.3d 278, 287 (4th Cir. 2007).

6

Stidham is a former coal miner in his late sixties who worked for Westmoreland for over twenty-nine years in Virginia. Most of Stidham's employment took place underground, where he performed a variety of tasks that ranged from constructing the concrete brattices that separate the mining gases from the workers to operating various types of underground equipment. Stidham stopped working for Westmoreland in 1995, when the company ceased its operations where Stidham worked.

With the exception of a thirteen-year hiatus beginning in 1977, Stidham has smoked since his early twenties, and he was smoking approximately one-half of one pack per day at the time of his hearing. Stidham's breathing problems, which he has had for "a long time," became aggravated in 2004. J.A. 202. Stidham has been on oxygen since 2005 and currently uses it nearly all of the time. He also uses a nebulizer.

Stidham filed a claim under the Act on January 7, 2008, and the District Director of the U.S. Department of Labor's Office of Workers' Compensation Programs awarded him interim benefits. Westmoreland requested an evidentiary hearing before an ALJ pursuant to 20 C.F.R. § 725.451, which the ALJ held on June 24, 2009. On May 16, 2011, the ALJ issued a Decision and Order Granting Benefits. The ALJ found that Stidham "established that he is totally disabled due to pneumoconiosis based upon the 15-

7

year presumption . . . [and] that the presumption has not been rebutted." ALJ Decision and Order at 24.

The ALJ admitted a variety of evidence into the record, including Stidham's testimony, x-rays, pulmonary function tests, arterial blood gas studies, treatment records, and CT scans. The ALJ also received conflicting medical opinions interpreting the aforementioned evidence.[2] For Westmoreland, Dr. Kirk Hippensteel "'ruled out [Claimant's] coal dust exposure as playing any role in his respiratory or pulmonary impairment[,]'" and Dr. David Rosenberg "'ruled out' a contribution by coal mine dust exposure to Claimant's lung disease[.]" Id. at 8–9 (quoting Dr. Hippensteel's and Dr. Rosenberg's supplemental reports). Dr. Basham, Stidham's treating physician, provided an opinion noting that Stidham "had a history of coal workers' pneumoconiosis and COPD [chronic obstructive pulmonary disease], based on CT scans of the lungs." Id. at 8. Additionally, Dr. J. Randolph Forehand, the examining physician for the Department of Labor, concluded that Stidham had both "coal workers' pneumoconiosis and cigarette smokers' lung disease." Id.

The ALJ considered the credentials of the four physicians, explaining that Drs. Rosenberg and Hippensteel possessed the

_____

[2] Though they disagreed over the "disease mechanisms behind the disability[,]" all four physicians deemed Stidham totally disabled. ALJ Decision and Order at 14.

8

"highest qualification for identifying the causes of lung disease." Id. at 13. The ALJ also noted that although Dr. Forehand was not a board-certified pulmonologist, he possessed other credentials, including twenty years of experience performing pulmonary examinations on behalf of the Department of Labor. Because nothing indicated that Dr. Forehand's examination of Stidham was insufficient due to his lack of being a board-certified pulmonologist, the ALJ determined that Dr. Forehand's "conclusions are not entitled to less weight based solely on the lack of that additional credential." Id. at 14.

Regarding Dr. Basham, the ALJ explained that his conclusions would be weighed "less heavily because he does not possess special credentials in pulmonary medicine[.]" Id. at 20. The ALJ did give Dr. Basham's opinion consideration "because of his extended history of treatment with Claimant[,]" but she limited its weight to the extent that the opinion was "well reasoned and documented." Id. at 20–21; see also 20 C.F.R. § 718.104(d) (requiring the ALJ to "give consideration to the relationship between the miner and any treating physician whose report is admitted into the record" and setting forth the factors in weighing the treating physician's opinion).

The ALJ evaluated each of the physicians' conclusions in light of the weight accorded to their respective opinions and in light of the evidence on which each of their opinions was based.

9

The ALJ determined that "although at first blush the medical opinion evidence is in equipoise, I ultimately find that a preponderance of the medical opinion evidence tends to disprove the existence of clinical pneumoconiosis." Id. at 21. Specifically, the ALJ found that Drs. Rosenberg and Hippensteel rebutted the presumption of clinical pneumoconiosis because they based their opinions on evidence that Dr. Forehand did not consider, namely, certain CT scans that did not contain markers for clinical pneumoconiosis. The ALJ also conducted a "critical analysis of Dr. Basham's conclusion regarding clinical pneumoconiosis" and discredited his conclusion because it "was made by history[]" rather than by an examination of the medical evidence. Id.

However, the ALJ concluded that Westmoreland did not rebut the presumption of pneumoconiosis because it failed to establish that Stidham did not have legal pneumoconiosis or that Stidham's disability was not caused by pneumoconiosis. The ALJ made this determination notwithstanding Dr. Hippensteel's and Dr. Rosenberg's claims to have "ruled out any contribution by coal mine dust[.]" The ALJ looked behind their conclusions at "the reasoning of their reports and deposition testimony" to find "that they were not actually able to rule it out." Id. at 22. Specifically, although both physicians asserted that Stidham's symptoms were "related to" or "classic" for cigarette smoking

10

disease, neither "explained why, assuming that cigarette smoking played the main role in causing the Claimant's acknowledged pulmonary and respiratory disability, coal mine dust exposure could not have played some lesser, but nevertheless significant, role, consistent with the discussion of the epidemiology in the Preamble to the regulations." Id. at 22–23.

Further, the ALJ credited Dr. Forehand, who explained that "the consequences of cigarette smoking and coal mine dust exposure were additive and combine to totally and permanently disable claimant." Id. at 22. (quotation marks omitted). The ALJ found this conclusion to be "reasoned and documented, as well as consistent with the Department of Labor's analysis as set forth in the Preamble to the amended regulations." Id. The ALJ further found that neither Dr. Hippensteel nor Dr. Rosenberg refuted Dr. Forehand because neither explained how they determined "that coal mine dust exposure did not contribute to or aggravate the disability." Id. at 23.

Thus, the ALJ concluded that Westmoreland failed to rebut the fifteen-year presumption because it failed to establish that Stidham did not have legal pneumoconiosis. The ALJ further concluded that Westmoreland failed to rebut the fifteen-year presumption because it failed to establish that none of Stidham's disability was caused by pneumoconiosis.

11

Westmoreland appealed to the Board, arguing, among other things, that the ALJ erred by finding that the employer failed to rebut the presumption of pneumoconiosis. The Board affirmed, holding that substantial evidence supported the ALJ's credibility determinations and ultimate conclusions. Westmoreland now petitions this Court for review.

## III.

At the outset, we note that it is undisputed that Stidham is totally disabled from chronic obstructive pulmonary disease ("COPD"), that Stidham worked in Westmoreland's mines for over twenty-nine years, and that because he worked underground for more than fifteen years, Stidham is entitled to the fifteen-year presumption that his total disability is due to pneumoconiosis.[3] The only contested issue is whether Westmoreland has rebutted the presumption.

Westmoreland argues that the ALJ's decision is not supported by substantial evidence and that the ALJ erred by interpreting "the Preamble to discredit all medical evidence

---

[3] In its opening brief, Westmoreland contested the applicability of the fifteen-year presumption. However, Westmoreland expressly abandoned this challenge at oral argument. Had Westmoreland advanced it, it would have failed in any event, because substantial, uncontested evidence supports the application of the presumption in this case.

that coal mine dust did not cause or contribute to claimant's pulmonary condition." Petitioner's Br. at 42. Westmoreland further argues that the ALJ's invocation of the Preamble created an irrefutable presumption, "an impermissible burden shifting[,] and [a] violation of due process . . . ." Petitioner's Br. at 49. We address each argument in turn.

A.

Westmoreland's first argument on appeal is that the ALJ's decision is not supported by substantial evidence, in part because the ALJ improperly relied on the Preamble to "discredit all medical evidence" supporting the assertion that Stidham did not have pneumoconiosis. Petitioner's Br. at 42. This argument mischaracterizes the ALJ's use of the Preamble and misconstrues the ALJ's decision.

In an opinion spanning twenty-five single-spaced pages, the ALJ thoroughly analyzed and weighed the large quantity of medical evidence before deciding that Westmoreland failed to rebut the fifteen-year presumption. The ALJ determined that the standard X-ray evidence was in equipoise, that the record failed to support that the digital X-ray evidence was medically acceptable or relevant, and that Stidham's treatment and hospital records failed to address the etiology of his disability. The ALJ explained that the CT scan evidence tended to rebut a finding of clinical pneumoconiosis but that it

13

neither supported nor undermined the finding of legal pneumoconiosis because the interpretation of the scans failed to address the etiology of the lung disease that was obviously present.

Turning to the medical opinion evidence, the ALJ noted that "there is a split . . . on the issue of pneumoconiosis, with two physicians finding pneumoconiosis and two disputing its existence." ALJ Decision and Order at 21. The ALJ concluded that the competing medical opinion evidence failed to rebut a finding of legal pneumoconiosis "although it does tend to rebut a finding of clinical pneumoconiosis." Id. at 18.

The ALJ explained in detail how she looked behind the conclusions of all four physicians to consider the evidence on which their conclusions were based. She determined that Dr. Basham's diagnosis was "made by history" and was "essentially conclusory on the pneumoconiosis issue." Id. at 21. The ALJ further found that although Dr. Forehand relied on more X-ray evidence than did Drs. Rosenberg and Hippensteel, he did not review the same negative CT scans that they used to reach their conclusions. She thus gave the opinions of Drs. Rosenberg and Hippensteel more weight. Id. The ALJ found their opinions, together with the CT scan evidence, sufficient to establish that Stidham did not suffer from clinical pneumoconiosis.

14

However, the ALJ determined that none of the medical opinions or other evidence rebutted a finding of legal pneumoconiosis or a finding that Stidham's disability was caused by pneumoconiosis. In the same way that she looked at the reasoning behind the conclusions of Drs. Basham and Forehand when she determined that they did not adequately support a diagnosis of clinical pneumoconiosis, the ALJ examined the reasoning employed by Drs. Rosenberg and Hippensteel and found that although they claimed to rule out any contribution of coal-mine dust, they "were not actually able to rule it out." Id. at 22. Specifically, the ALJ noted that Dr. Hippensteel failed to explain why coal-mine dust could not have contributed to Stidham's impairment and that Dr. Rosenberg failed to explain why coal-mine dust could not have aggravated Stidham's disability. Id. at 22–23. "They therefore did not articulate a cogent basis for excluding coal mine dust exposure as a causative agent, and they did not refute the existence of legal pneumoconiosis." Id. at 23. The ALJ further found "that the Employer has failed to rule out pneumoconiosis as a cause of Claimant's disability for the same reason that Employer has failed to prove by a preponderance of the evidence that Claimant does not suffer from legal pneumoconiosis." Id.

The ALJ's determination that Dr. Rosenberg and Dr. Hippensteel failed to support their broad conclusions with

15

substantive analysis would have been sufficient to find that Westmoreland did not rebut the presumption. However, this was not the only basis for the ALJ's decision. Dr. Forehand testified that Stidham had pneumoconiosis and that it was caused by a combination of his coal mine dust exposure and his cigarette smoking. And the ALJ had previously explained that Dr. Forehand's opinion was entitled to the same weight as those of Drs. Hippensteel and Rosenberg.

The ALJ further noted that Dr. Forehand's testimony was consistent with the medical research studies cited in the Preamble. According to the Preamble, scientific literature "support[s] the theory that dust-induced emphysema and smoke-induced emphysema occur through similar mechanisms. . . ." Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, 65 Fed. Reg. 79920, 79943 (Dec. 20, 2000). The Preamble also notes that "[e]ven in the absence of smoking, coal mine dust exposure is clearly associated with clinically significant airways obstruction and chronic bronchitis. The risk is additive with cigarette smoking." Id. at 79940.

We have previously "made plain that an ALJ may consider the . . . Preamble in assessing medical expert opinions." Cochran, 718 F.3d at 323. See also Harman, 678 F.3d at 314-15 ("Although the ALJ did not need to look to the preamble in assessing the credibility of [a doctor's] views, we conclude that the ALJ was

16

entitled to do so . . . ."). And that is precisely what the ALJ did in this case.

Put simply, the ALJ did not use "the Preamble to discredit all medical evidence that coal mine dust did not cause or contribute to claimant's pulmonary condition." Petitioner's Br. at 42. Rather, the ALJ admitted and thoughtfully considered a large quantity of medical evidence, some of which she found persuasive in her determination that Stidham did not have clinical pneumoconiosis and some of which she found persuasive in her determination that Westmoreland failed to rebut the other aspects of the fifteen-year presumption.

To the extent that the ALJ used the Preamble, it was as a tool to assess the relative credibility of the competing medical opinion evidence. Specifically, she credited Dr. Forehand, whose conclusion was supported by his own analysis and consistent with the Preamble, over Drs. Rosenberg and Hippensteel, whose conclusions were not only inadequately supported by their own analyses, but were also inconsistent with the Preamble. It is well within the ALJ's discretion to reference the Preamble when making this credibility determination. See Cochran, 718 F.3d at 323; Harman, 678 F.3d at 314-15.

In sum, here, as in Cochran, the parties presented a "'battle of the experts.' It is the role of the ALJ—not the

17

appellate court—to resolve that battle." <u>Cochran</u>, 718 F.3d at 324. Here, as in <u>Cochran</u>, the ALJ's "detailed order reveals a careful consideration of the experts' qualifications, their opinions, and the underlying medical science. The order also explains why the ALJ chose to give [certain evidence] more weight." <u>Id.</u> The ALJ's determinations are supported by substantial evidence and suggest no reversible error. Accordingly, the Board properly affirmed.

B.

Westmoreland's second argument on appeal is that "[b]y holding that the Preamble does not allow an employer to rebut the presumption with evidence that cigarette smoking . . . caused claimant's pulmonary impairment, [the ALJ] has limited the Employer's ability to rebut the presumption to such a substantial degree that the presumption is not rebuttable at all." Petitioner's Br. at 22. Again, we disagree and find no error with the ALJ's use of the Preamble.

We first note that Westmoreland has again misconstrued the ALJ's analysis. Contrary to Westmoreland's framing of the issue, the ALJ never held that the Preamble does not allow an employer to rebut the fifteen-year presumption. In fact, as discussed in detail above, the ALJ admitted and carefully weighed a great deal of evidence. Moreover, the ALJ found that Westmoreland successfully rebutted the presumption as to

18

clinical pneumoconiosis.  See, e.g., ALJ Decision and Order at 22 (recounting Dr. Rosenberg's explanation that Stidham's "lung disease was classic for cigarette smoking disease" and commenting that "[h]is discussion on that point was persuasive").

The ALJ's use of the Preamble did not transform the rebuttable presumption into an irrefutable presumption. Westmoreland's experts presented evidence that, if found to be credible, might have been sufficient to rebut the presumption. But, as discussed at length above, the ALJ determined that the conclusions of the medical opinions offered in rebuttal were not supported by the analyses on which they were based.  Moreover, they directly conflicted with an opinion that the ALJ found to be well-supported and well-reasoned.  Finally, the ALJ found those conclusions to be in conflict with the Preamble, which we have held the ALJ may consider in assessing physicians' credibility.  Cochran, 718 F.3d at 323–25; Harman, 678 F.3d at 314–15.

Credibility determinations are made by the ALJ, not by this Court, and "[w]e defer to the ALJ's evaluation of the proper weight to accord conflicting medical opinions."  Stiltner, 86 F.3d at 342.  We find no error with the ALJ's use of the Preamble to assist in her credibility determination of the competing expert medical opinions.

19

IV.

For the foregoing reasons, we deny Westmoreland's petition for review.

PETITION FOR REVIEW DENIED