**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-1544**

———————

EXTRA ENERGY, INCORPORATED,

      Petitioner,

v.

GLEN K. LAWSON; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

      Respondents.

———————

On Petition for Review of an Order of the Benefits Review Board.  (22-0248 BLA)

———————

Argued:  March 19, 2025                       Decided:  June 3, 2025

———————

Before WILKINSON, NIEMEYER, and WYNN, Circuit Judges.

———————

Petition for review denied by published opinion.  Judge Wynn wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

———————

Mark Joseph Grigoraci, ROBINSON & MCELWEE, PLLC, Charleston, West Virginia, for Petitioner.  Brad Anthony Austin, WOLFE, WILLIAMS & AUSTIN, Norton, Virginia, for Respondents.

———————

WYNN, Circuit Judge:

Glen Lawson spent twelve years working ten-to-twelve-hour shifts, six days a week, for coal-mining companies. He also has a lengthy smoking history; before quitting in 2014, he had smoked a pack a day for thirty years. Today, he is totally disabled due to respiratory ailments, including chronic obstructive pulmonary disease ("COPD"). He has used a portable oxygen tank since 2014, required lung surgery in 2017, and been hospitalized with pneumonia several times.

In 2017, Lawson applied for benefits under the Black Lung Benefits Act. A claims examiner approved the application, an administrative law judge ("ALJ") upheld that determination, and the Benefits Review Board ("Board") affirmed.

Lawson's former employer, Extra Energy, Inc., petitions this Court for review, seeking to undo the benefits determination. Extra Energy argues that Lawson did not put forward sufficient evidence that his respiratory disabilities are attributable at least in part to his coal-mining employment, rather than solely to his smoking history.

We disagree. Our standard of review in black-lung-benefits cases is highly deferential. And here, the ALJ sufficiently supported his conclusions regarding the cause of Lawson's disabilities. We therefore deny Extra Energy's petition for review.

## I.

### A.

"The Black Lung Benefits Act aims 'to provide benefits . . . to coal miners who are totally disabled due to pneumoconiosis[.]'" *Am. Energy, LLC v. Dir., Off. of Workers' Comp. Programs*, 106 F.4th 319, 324 (4th Cir. 2024) (citation omitted) (quoting 30 U.S.C.

2

§ 901(a)). "Colloquially known as black lung disease, pneumoconiosis is defined by the Act as 'a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment.'" *Id.* (quoting 30 U.S.C. § 902(b)). If a miner seeking black-lung benefits worked in underground coal mines for less than 15 years,[1] as is the case with Lawson, he must prove four elements by a preponderance of the evidence: (1) that he has pneumoconiosis (2) arising out of coal mine employment; (3) that he is totally disabled by a pulmonary or respiratory impairment; and (4) that his pneumoconiosis is a substantially contributing cause of that total disability. *Id.*

"The courts have long recognized that pneumoconiosis can take two forms: 'clinical' pneumoconiosis and 'legal' pneumoconiosis." *Harman Mining Co. v. Dir., Off. of Workers' Comp. Programs*, 678 F.3d 305, 308 (4th Cir. 2012). While "clinical pneumoconiosis looks for the presence of particles in the lungs and the lungs' reaction to those particles[,] . . . . [l]egal pneumoconiosis does not require evidence of particles in the miner's lungs." *Am. Energy*, 106 F.4th at 325. Thus, "[l]egal pneumoconiosis is significantly broader" than clinical pneumoconiosis, and "the absence of clinical pneumoconiosis cannot be used to rule out legal pneumoconiosis." *Westmoreland Coal Co. v. Cochran*, 718 F.3d 319, 321, 324 (4th Cir. 2013) (internal quotation marks omitted).

The Department of Labor's regulations define legal pneumoconiosis as "any chronic lung disease or impairment and its sequelae"—including, but not limited to, "any chronic

---

[1] Miners who worked for at least 15 years and have "a totally disabling respiratory or pulmonary impairment" are rebuttably presumed to have pneumoconiosis. *E. Associated Coal Corp. v. Dir., Off. of Workers' Comp. Programs*, 805 F.3d 502, 505 (4th Cir. 2015).

restrictive or obstructive pulmonary disease"—that "aris[es] out of coal mine employment." 20 C.F.R. § 718.201(a)(2). "[A] disease 'arising out of coal mine employment' includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." *Id.* § 718.201(b). One such condition can be COPD, which includes "chronic bronchitis, emphysema[,] and asthma." Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, 65 Fed. Reg. 79920, 79939 (Dec. 20, 2000); *see Am. Energy*, 106 F.4th at 325.

Importantly, "the Act does not require that coal mine dust exposure be the *sole* cause of" the respiratory or pulmonary impairment. *Cochran*, 718 F.3d at 323 (emphasis added). So, for example, a miner with a smoking history is entitled to benefits if he sustains his burden of demonstrating that his impairments are "'significantly related to, or substantially aggravated by, dust exposure in coal mine employment,'" even if they are also "'caused in part by smoking,'" and even if "'it [is] difficult to differentiate between the effects caused by smoking and the effects caused by coal mine dust.'" *Id.* (first quoting 20 C.F.R. § 718.201(b); and then quoting *Consolidation Coal Co. v. Swiger*, 98 F. App'x 227, 238 (4th Cir. 2004) (per curiam)).

### B.

Lawson filed a claim for black-lung benefits in 2017. A claims examiner approved the application in 2018 and concluded that Lawson's former employer, Extra Energy, was responsible for paying his benefits.

At Extra Energy's request, ALJ Noran Camp held a formal hearing in 2019. Lawson

4

testified that his work for Extra Energy involved "run[ning] a grease truck and a fuel truck," including servicing and fueling equipment, and "sometimes . . . dr[iving] rock trucks." J.A. 31.[2] He worked ten-to-twelve-hour shifts, six days a week. Lawson explained that he began using a portable oxygen tank in 2014; had to have part of his lung surgically removed in 2017; and had been hospitalized with pneumonia four times since. He also testified that he began smoking sporadically in 1974 (at age 16) and that beginning in his 20s, he smoked a pack a day until he quit in 2014 (at age 55).

The parties stipulated that Lawson worked in coal mining for 12 years total and "is totally disabled on a pulmonary or respiratory basis." J.A. 200. In light of these stipulations, the questions before the ALJ were whether Lawson had pneumoconiosis (clinical or legal), and if so, whether his coal mine employment caused the pneumoconiosis and whether the pneumoconiosis caused his disability.

The parties submitted five independent medical opinions[3]: those of Dr. Randolph Forehand (submitted by the Director of the Office of Workers' Compensation Programs), Drs. Michael Green and Vishal Raj (submitted by Lawson), and Drs. Roger McSharry and David Rosenberg (submitted by Extra Energy). Drs. Forehand, Green, and Raj concluded that Lawson's respiratory and pulmonary ailments were caused by both his smoking history and his coal-mine employment, and thus that he had legal pneumoconiosis. Drs. McSharry

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[3] Lawson also submitted treatment records, but those records simply note his diagnoses of pneumoconiosis and COPD. The ALJ did not give any weight to those records. And Extra Energy submitted part of an operative report related to Lawson's lung surgery, but the portion of the report submitted did not include a biopsy report and thus is of unclear relevance.

5

and Rosenberg disagreed, attributing his relevant disabilities solely to his smoking history.

In a February 2022 decision, the ALJ found that Lawson had smoked "for approximately 30 pack years"—that is, an average of one pack per day for 30 years. J.A. 200. Turning to the question of pneumoconiosis, the ALJ found that, based on X-ray and other medical-record evidence, Lawson had not established that he had clinical pneumoconiosis. But, after closely evaluating the five medical opinions, the ALJ concluded that the opinions of Drs. Forehand, Green, and Raj were entitled to greater weight than those of Drs. McSharry and Rosenberg. Based on that analysis, he found that "the medical opinion evidence supports a finding of legal pneumoconiosis" even though it "weighs against a finding of clinical pneumoconiosis." J.A. 214.

Because "by definition, legal pneumoconiosis arises out of coal mine employment," a diagnosis of legal pneumoconiosis automatically satisfies the causal requirement between coal mine employment and the impairment. *Am. Energy*, 106 F.4th at 325; *see* 20 C.F.R. § 718.201(a)(2). The ALJ also agreed with the parties' stipulation that Lawson was "totally disabled on a pulmonary or respiratory basis," which he found supported by various tests in the record as well as all five medical opinions. J.A. 200. And "[t]here [was] no real dispute among the reviewing physicians as to whether [Lawson]'s emphysema/COPD contributed to his total disability." J.A. 216. So, the ALJ concluded, Lawson had satisfied the four elements necessary to be entitled to black-lung benefits.

Extra Energy appealed to the Board, which affirmed. Extra Energy timely filed a petition for review in this Court.

6

II.

The issue on appeal is whether Lawson met his burden to show, by a preponderance of the evidence, that he had legal pneumoconiosis.[4] Because the ALJ rested his legal-pneumoconiosis conclusion only on his evaluation of the five medical opinions—crediting the three that supported a legal-pneumoconiosis diagnosis and discrediting the two that rejected it—the sole question we need to answer is whether the ALJ erred in resolving this "battle of the experts." *W. Va. Coal Workers' Pneumoconiosis Fund v. Bell*, 781 F. App'x 214, 217 (4th Cir. 2019) (Richardson, J., writing separately and announcing the judgment) (describing case as involving "a classic battle of the experts" where, as here, the claimant's "expert said that his lung problems were caused largely by his exposure to coal dust, while the [other party]'s experts attributed [his] health problems to his smoking").

We do not review that question on a blank slate. To the contrary, it is well established that our "review of the Board's order is limited," *Cochran*, 718 F.3d at 322

---

[4] Extra Energy nominally challenges the ALJ's conclusion that Lawson can satisfy the fourth element of the black-lung benefits test: "that his pneumoconiosis is a substantially contributing cause of his total [pulmonary or respiratory] disability." *Am. Energy*, 106 F.4th at 324. But Extra Energy provides no reason why the ALJ erred in concluding that "[t]here [was] no real dispute among the reviewing physicians as to whether [Lawson]'s emphysema/COPD contributed to his total disability." J.A. 216. Instead, it argues that (1) Lawson does not have legal pneumoconiosis and (2) other causes, such as coronary artery bypass surgery, contributed to his disability. *See* Opening Br. at 33–35. But the question of whether Lawson has legal pneumoconiosis is the central issue on appeal and is discussed below; and whether there were other causes to his disabilities does not preclude legal pneumoconiosis from being a "substantially contributing cause." Nor does Extra Energy explain why our pronouncement "that if a miner's legal pneumoconiosis *is* his total disability, separately analyzing disability causation is unnecessary," does not apply here. *Am. Energy*, 106 F.4th at 326. Given Extra Energy's minimal arguments on this point, we will not comment on it further.

(quoting *Harman*, 678 F.3d at 310), and "is governed by the same standard the Board applies when reviewing an ALJ's decision," *Am. Energy*, 106 F.4th at 330 (quoting *Boyd & Stevenson Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 407 F.3d 663, 666 (4th Cir. 2005)). That standard is de novo for legal conclusions but highly deferential for factual findings. *Am. Energy*, 106 F.4th at 330. This is because "the ALJ, as the trier of fact, 'is charged with making factual findings, including evaluating the credibility of witnesses and weighing contradicting evidence.'" *Mingo Logan Coal Co. v. Owens*, 724 F.3d 550, 557 (4th Cir. 2013) (quoting *Doss v. Dir., Off. of Workers' Comp. Programs*, 53 F.3d 654, 658 (4th Cir. 1995)). For this reason, "we do not undertake to reweigh contradictory medical evidence, make credibility determinations, or substitute our judgment for that reached below." *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 252 (4th Cir. 2016).

"We will not disturb an ALJ's factual finding, 'even if we disagree with it, provided the determination is supported by substantial evidence.'" *Am. Energy*, 106 F.4th at 330 (quoting *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). To evaluate whether substantial evidence supports an ALJ's determination, "we consider 'whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence.'" *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 504 (4th Cir. 2015) (quoting *Mingo Logan Coal Co.*, 724 F.3d at 557). "[T]he ALJ's duty of explanation is satisfied 'if a reviewing court can discern what the ALJ did and why [ ]he did it.'" *Island Creek Coal Co. v. Blankenship*, 123 F.4th 684, 695 (4th Cir. 2024) (quoting *Harman*, 678 F.3d at 316).

The case at hand involves the evaluation of competing medical opinions. "We defer

8

to the ALJ's determination regarding the proper weight to be accorded competing medical evidence, and we 'must be careful not to substitute our judgment for that of the ALJ.'" *W. Va. CWP Fund v. Bender*, 782 F.3d 129, 144 (4th Cir. 2015) (quoting *Harman*, 678 F.3d at 310); *accord Island Creek Coal Co. v. Compton*, 211 F.3d 203, 211 (4th Cir. 2000) ("[I]t is the province of the ALJ to evaluate the physicians' opinions.").

"'[A]s trier of fact, the ALJ is not bound to accept the opinion or theory of any medical expert,' but instead 'must evaluate the evidence, weigh it, and draw his own conclusions.'" *Bender*, 782 F.3d at 144 (quoting *Underwood v. Elkay Mining, Inc.*, 105 F.3d 946, 949 (4th Cir. 1997)). To be sure, "an ALJ may not credit or discredit expert testimony 'for no reason or for the wrong reason.'" *Sea "B" Mining Co.*, 831 F.3d at 257 (quoting *King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980)). But at bottom, "[i]t is the role of the ALJ—not the appellate court—to resolve" a "battle of the experts." *Cochran*, 718 F.3d at 324 (citing *Harman*, 678 F.3d at 310). "Therefore, we will not disrupt the ALJ's decision to credit the opinion of one expert over another." *Bender*, 782 F.3d at 145.

One reason ALJs sometimes give for discrediting medical experts' opinions is their inconsistency with the preamble to the 2000 Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969. *See* 65 Fed. Reg. 79920. The preamble "explains the scientific and medical basis for the regulations," *Harman*, 678 F.3d at 315 n.4, and "provides guidance for the four elements of black lung benefits claims," *Am. Energy*, 106 F.4th at 326. While the preamble "is nonbinding guidance[,] . . . . we have said that '[it] is entirely consistent with the [Black Lung Benefits] Act and its regulations and simply explains the scientific and medical basis for the regulations.'" *Consolidation Coal Co. v.*

9

*Shipley*, No. 19-1738, 2022 WL 402432, at *3 (4th Cir. Feb. 9, 2022) (quoting *Harman*, 678 F.3d at 315 n.4). Thus, ALJs have "discretion to reject the opinions of . . . experts based on the preamble." *Id.* Indeed, we have held that "[i]t is appropriate to give 'little weight . . . to medical findings that conflict with the [Black Lung Benefits Act]'s implementing regulations.'" *Westmoreland Coal Co. v. Stallard*, 876 F.3d 663, 671 (4th Cir. 2017) (quoting *Lewis Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 373 F.3d 570, 580 (4th Cir. 2004)).

However, an ALJ errs when he credits a medical opinion for being consistent with the preamble when the opinion actually *contradicts* the preamble's text. *Sea "B" Mining Co.*, 831 F.3d at 257. Additionally, "the principle that an ALJ may discredit an expert's opinion as inconsistent with the preamble only applies if the opinion is, in fact, inconsistent with the preamble." *Am. Energy*, 106 F.4th at 332.

The question of how we are to evaluate an ALJ's determination of the cause of pulmonary or respiratory impairments when an individual with prior coal mine employment also has a smoking history has arisen repeatedly in our case law, and we have never deviated from our normal standard of review to address it. For example, an ALJ can "discredit an opinion that lacks a thorough explanation, but [he] is not legally *compelled* to do so." *Compton*, 211 F.3d at 212 (emphasis added) (citing *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 532 n.9 (4th Cir. 1998)). For that reason, in *Island Creek Coal Co. v. Compton*, we upheld an ALJ's reliance on a medical opinion because "although [the doctor] did not offer *any* explanation for his conclusion that [the claimant]'s disease was partially caused by exposure to coal dust [and partly by smoking], the totality of his report

10

indicate[d] that he reached a 'reasoned medical opinion.'" *Id.* (emphasis added) (quoting 20 C.F.R. § 718.202(a)(4)).

Similarly, in *Westmoreland Coal Co. v. Cochran*, we upheld an ALJ's reliance on a medical opinion over a dissenting colleague's objection that the doctor's conclusion was made "summarily." *Cochran*, 718 F.3d at 325 (Traxler, C.J., dissenting). We noted that the medical expert had "testified that *both* coal mine dust and cigarette smoke *were* causes, affirmatively asserting '[the claimant]'s coal mine dust exposure must be considered a significant contributing factor to his what should be described as overlap syndrome . . . and that he does have at least legal pneumoconiosis, i.e. COPD/emphysema caused in significant part by coal mine dust exposure.'" *Id.* at 322 (majority opinion) (quoting joint appendix). We held that, in light of this "expert opinion, the ALJ's conclusion that [the claimant]'s 'COPD/emphysema [is] due in part to coal mine dust exposure' was supported by substantial evidence." *Id.* at 323 (quoting joint appendix).

And in *Harman Mining Co. v. Director, Office of Workers' Compensation Programs*, we upheld the ALJ's decision to "giv[e] determinative weight" to an expert's opinion that the claimant suffered from COPD "that arose from 'a combination' of exposure to coal dust and smoking . . . . because, *despite its brevity*, the ALJ found that the totality of the [doctor's] report indicated that it was 'well-reasoned.'" *Harman*, 678 F.3d at 311 (emphasis added).

This is not to say that we give ALJs a blank check to adopt on any basis whatsoever the opinions of doctors who support a finding of legal pneumoconiosis despite a history of smoking. In *American Energy, LLC v. Director, Office of Workers' Compensation*

11

*Programs*, we held that an ALJ erred when he summarily credited and discredited experts based on a single rationale that erroneously interpreted the preamble and confused the burden of proof. *Am. Energy*, 106 F.4th at 331–33.

Specifically, in that case, "the *only reason* the ALJ gave for finding [the claimant]'s experts' legal pneumoconiosis opinions more persuasive [than the employer's] was that they were consistent with the preamble *because they attributed [the claimant]'s impairment to both smoking and coal dust*." *Id.* at 333 (emphasis added). But the preamble just states that "[e]ven in the absence of [cigarette] smoking, coal mine dust exposure is clearly associated with clinically significant airways obstruction and chronic bronchitis" and that this "risk is additive with cigarette smoking." 65 Fed. Reg. 79940. That is, the preamble "says that a history of smoking does not *foreclose* a conclusion that coal dust caused or contributed to a miner's lung disease"—"[i]t does not say that a history of both coal dust exposure and smoking forecloses a conclusion that smoking, and not coal dust exposure, caused [his] lung disease." *Am. Energy*, 106 F.4th at 332 (emphasis added).

Put another way, the mere fact that an expert attributed a disability to both smoking and coal dust was not enough, standing alone, to credit their opinion on the basis that it was consistent with the preamble. *Id.* Nor was the mere fact that an expert attributed a disability solely to smoking enough to *dis*credit it on the basis that it was *in*consistent with the preamble. *Id.* at 332–33. Nevertheless, we emphasized that "the ALJ could have permissibly found the legal pneumoconiosis opinions of [the various] physicians to be [more or] less *persuasive* than" others' "for any number of reasons." *Id.* at 333; *cf. S. Ohio Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 128 F.4th 809, 820 (6th Cir. 2025)

12

(distinguishing *American Energy* in part because, in *Southern Ohio Coal Co.*, "inconsistency with the preamble was not 'the only reason that the ALJ gave for finding [Southern Ohio Coal's experts] . . . less persuasive'").

In sum, our review of the factual aspects of the Board's decision in black-lung benefits cases is limited and highly deferential. One such factual aspect is the ALJ's analysis of medical opinions. ALJs are not bound to accept any particular expert's view, and we are not to substitute our own view that an ALJ should or should not have credited an expert. *See Bender*, 782 F.3d at 144; *Sea "B" Mining Co.*, 831 F.3d at 252. Instead, we determine whether the ALJ erred by "credit[ing] or discredit[ing] expert testimony 'for no reason or for the wrong reason.'" *Sea "B" Mining Co.*, 831 F.3d at 257 (quoting *King*, 615 F.2d at 1020).

For example, we have held that an ALJ errs by effectively adopting a presumption that a disabled claimant who has both a smoking history and a history of coal-dust exposure has legal pneumoconiosis. *Am. Energy*, 106 F.4th at 326. But we have also held that an ALJ does not err by crediting a medical opinion lacking any explanation for the conclusion that the disability was partially caused by exposure to coal dust, where the totality of the opinion indicated that it was reasoned. *Compton*, 211 F.3d at 212. And we have held that an ALJ could properly rely on a medical expert's affirmative statement that both coal dust and smoking *were* causes of the disability. *Cochran*, 718 F.3d at 322.

## III.

Applying this highly deferential standard of review to this case, we agree with the Board's decision affirming the award of benefits.

13

As discussed, "[u]ltimately, . . . [Lawson]'s claim reduce[d] to a case of conflicting medical opinions, i.e., a 'battle of the experts.'" *Cochran*, 718 F.3d at 324. And, as we have repeatedly explained, "[i]t is the role of the ALJ—not the appellate court—to resolve that battle." *Id.* (citing *Harman*, 678 F.3d at 310); *e.g.*, *Mingo Logan Coal Co.*, 724 F.3d at 558. Here, "[t]he ALJ's lengthy, detailed order reveals a careful consideration of the experts' qualifications, their opinions, and the underlying medical science." *Cochran*, 718 F.3d at 324. So, giving the ALJ the deference we owe him, we conclude that Extra Energy's petition for review lacks merit and must be denied.

### A.

Here, upon applying deferential review to the ALJ's order, we uphold the ALJ's decision to credit the opinions of Dr. Forehand, Dr. Green, and Dr. Raj, each of whom concluded that Lawson had legal pneumoconiosis.

Dr. Forehand examined Lawson and summarized several tests performed the same day: a chest X-ray, which showed some abnormalities, but none that were consistent with *clinical* pneumoconiosis; a ventilatory study, which showed an "obstructive ventilatory pattern"; and an arterial-blood-gas test, which showed "arterial hypoxemia." J.A. 178. He diagnosed Lawson with "obstructive lung disease" based on "shortness of breath, history of exposure to cigarette smoke, history of occupational exposure to coal mine dust, [and the] ventilatory study." J.A. 179 (capitalization standardized). Regarding the etiology of the diagnosis, Dr. Forehand concluded that Lawson's "parallel exposure to cigarette smoke for 27 years and occupational exposure to coal mine dust as a heavy equipment operator and truck driver on a strip job combined to substantially contribute to his obstructive lung

14

disease." *Id.* (capitalization standardized). He elaborated that Lawson's "lack of response to [a] bronchodilator[] points to the role played by coal mine dust exposure, which ca[]uses a fixed, irreversible component to airway obstruction." *Id.*

The ALJ credited Dr. Forehand's opinion as being consistent with the preamble's recognition "'that the risks of smoking and coal mine dust exposure are additive'" and also noted that Dr. Forehand's "finding of no clinical pneumoconiosis [was] consistent with the weight of the X-ray evidence." J.A. 208 (quoting *Pennington v. Bates Contracting & Constr., Inc.*, No. BRB 13-0287 BLA, 2014 WL 993094, at *2 (Ben. Rev. Bd. Feb. 25, 2014)). In a footnote, the ALJ elaborated on the preamble's discussion of the additive risks of "clinically significant airways obstruction and chronic bronchitis" posed by smoking and coal mine dust exposure. J.A. 208 n.40 (quoting 65 Fed. Reg. at 79940). And while the ALJ stated that Dr. Forehand's "reliance on there being no bronchodilator response is *questionable* on the issue of legal pneumoconiosis, as the existence of a fixed impairment relates more to the issue of clinical pneumoconiosis and Dr. Forehand did not have the benefit of reviewing other testing . . . which showed a bronchodilator response," he did not state that this reliance was fully in error or entitled to no weight. J.A. 208 (emphasis added). Finally, the ALJ concluded that Dr. Forehand's opinion was "[o]verall . . . reasoned and documented." *Id.*

An ALJ is entitled to credit an opinion if "the totality of the report indicated that it was 'well-reasoned.'" *Harman*, 678 F.3d at 311. And we must affirm so long as we can discern the ALJ's reasoning and that it was not erroneous.

Here, the ALJ showed his work: he explained exactly which aspects of Dr.

15

Forehand's opinion were more (or less) persuasive and stated that he found the opinion overall well-reasoned. The ALJ's analysis of Dr. Forehand's opinion is thus indistinguishable from the analyses of expert opinions we upheld in *Cochran* and *Harman*. *See Cochran*, 718 F.3d at 322 (affirming ALJ's reliance on medical expert who testified affirmatively that both coal mine dust and cigarette smoke were causes of the claimant's disability); *Harman*, 678 F.3d at 311 (affirming ALJ's reliance on medical expert who concluded that COPD arose from combination of coal dust exposure and smoking "because, despite its brevity, the ALJ found that the totality of the report indicated that it was 'well-reasoned'"). And unlike the medical expert we held to have been erroneously credited in *American Energy*, Dr. Forehand did not state that he could not discern whether coal dust was a cause of Lawson's disabilities. *See Am. Energy*, 106 F.4th at 333.

Regarding Dr. Green's review of Lawson's history, he conducted a physical exam, an arterial-blood-gas test, and reviewed a chest X-ray. The arterial-blood-gas test showed "significant hypoxemia at rest," and the X-ray showed "definite emphysema." J.A. 55. Dr. Green diagnosed pneumoconiosis "based on the reported 12-year occupational history of exposure to respirable coal and rock dust" as well as "[t]he history of chronic cough, wheeze, shortness of breath, and mucus expectoration[.]" *Id.* As to the etiology of the diagnosis, he stated that Lawson's smoking history was "a factor to be considered" but that his "12-year occupational history of exposure to respirable coal and rock dust is an additional significant contributing and aggravating factor . . . . that contributes substantially to the diagnosis of coal workers' pneumoconiosis and this gentleman's findings of hypoxemia." J.A. 56. The ALJ concluded that Dr. Green's opinion was "generally well

16

reasoned and documented, as well as consistent with the regulations and their scientific and medical basis, as set forth in the Preamble." J.A. 209.

As in *Cochran*, Dr. Green affirmatively stated that coal-dust exposure *was* a cause of Lawson's impairments. *Cochran*, 718 F.3d at 322. And as in *Compton*, even if Dr. Green's explanation of how he reached that conclusion was minimal, the ALJ properly concluded that "the totality of his report indicates that he reached a 'reasoned medical opinion.'" *Compton*, 211 F.3d at 212 (quoting 20 C.F.R. § 718.202(a)(4)).

Finally, Dr. Raj reviewed Lawson's history and an X-ray, examined him, and conducted an arterial-blood-gas test. He diagnosed Lawson with COPD, which he concluded "result[ed] from exposure to coal/rock dust for [a] total of 12 years in coal mine employment and cigarette smoking," both of which "are well-known risk factor[s]" for COPD. J.A. 77. In light of "the combined history" of both smoking and coal mine employment, Dr. Raj stated that "individual contribution [could ]not be stated but [the] 12 year history of exposure to respirable coal/rock dust has [a] substantial and significant role in [Lawson]'s pulmonary impairment." J.A. 78. The ALJ credited the opinion as "consistent with the regulations and their scientific and medical basis" and "generally reasoned and documented," though he gave the opinion "diminished weight" because Dr. Raj relied "upon a diminished smoking history of . . . 15 to 30 pack years[] instead of the . . . 30 pack years" that the ALJ had found. J.A. 212.

We hold that the ALJ did not err in partially crediting Dr. Raj's opinion. Again, the ALJ correctly concluded that the opinion was consistent with the preamble and also found it to be overall well-reasoned. While Dr. Raj recognized that he could not provide a specific

17

breakdown of what percentage of Lawson's disabilities were caused by smoking versus coal dust exposure, Extra Energy agrees no such "apportion[ment]" is necessary. Opening Br. at 18. And Dr. Raj affirmatively concluded that coal dust played a "substantial and significant role" in Lawson's disabilities, a conclusion the ALJ credited. J.A. 78.

Extra Energy argues that in crediting these three opinions, "the ALJ relied on the erroneous assumption . . . that exposure to coal mine dust and smoking must always be additive and it can never be true that smoking is the only cause of a miner's pulmonary impairment." Opening Br. at 12; *accord* Reply Br. at 2 (arguing that these medical opinions boil down to "a formula," that is, "coal mine dust exposure + smoking + COPD = legal pneumoconiosis"). Had the ALJ said that, we would agree that he erred. *See Am. Energy*, 106 F.4th at 326 ("[T]he preamble's recognition that a miner with a history of smoking may nevertheless have legal pneumoconiosis does not amount to a presumption."); *Sea "B" Mining Co.*, 831 F.3d at 257 ("[A]n ALJ may not credit or discredit expert testimony 'for no reason or for the wrong reason.'" (quoting *King*, 615 F.2d at 1020)).

That was the mistake that was fatal to the ALJ's decision in *American Energy*. There, the ALJ effectively "shifted the burden of proof from" the claimant to the employer by crediting the claimant's expert solely because his attribution of the claimant's disability to both coal dust and smoking was consistent with the preamble's recognition that both *can* be causes. *Am. Energy*, 106 F.4th at 331. In other words, the ALJ essentially interpreted the preamble to mandate a presumption that respiratory and pulmonary disabilities in a miner with a smoking history are caused by both smoking and coal-dust exposure, and used that presumption to evaluate all the expert opinions in one fell swoop based solely on that

18

issue. *Id.* at 333 (noting that this was the "only reason" the ALJ gave for crediting or discrediting the expert opinions).

But this case is different. Here, the ALJ analyzed each expert opinion independently and evaluated the level of reasoning and documentation in each opinion. The ALJ did not swiftly credit or discredit all of the expert opinions based on a single, erroneous interpretation of the preamble that impermissibly shifted the burden of proof away from the claimant. To the contrary, the ALJ's independent analyses of the expert opinions, which as discussed included several reasons for crediting or discrediting the experts, prevented the impermissible burden-shifting that was fatal to the ALJ's decision in *American Energy*.

The ALJ's discussion of these three opinions was thorough, and his analysis made clear his reasons for finding each credible and entitled to at least some weight. Consistent with our case law, we will not disturb those conclusions.

### B.

We also conclude that the ALJ did not err in giving less weight to the opinions of Drs. McSharry and Rosenberg, who asserted that Lawson did not have legal pneumoconiosis.

The ALJ found Dr. McSharry's opinion to be "not reasoned and documented because he has relied upon factors that are at odds with the regulations and their scientific and medical basis, as set forth in the Preamble." J.A. 210. The ALJ put forth three specific reasons for this conclusion. First, the ALJ faulted Dr. McSharry for noting the absence of radiological evidence of *clinical* pneumoconiosis in his discussion of *legal* pneumoconiosis, when such evidence is not required to support a diagnosis of legal

19

pneumoconiosis. The ALJ did not assert that Dr. McSharry's analysis blatantly contradicted the preamble, which would have been an exaggeration. Instead, he listed this as one factor that undermined the overall reliability of Dr. McSharry's analysis on the question of legal pneumoconiosis because it appeared Dr. McSharry was demanding evidence that was not required. This the ALJ was entitled to do. *See Bender*, 782 F.3d at 144 ("'[A]s trier of fact, the ALJ is not bound to accept the opinion or theory of any medical expert,' but instead 'must evaluate the evidence, weigh it, and draw his own conclusions.'" (quoting *Underwood*, 105 F.3d at 949)).

Next, the ALJ noted that "Dr. McSharry's reliance on the commonality of COPD/emphysema in smokers as compared with nonsmoking miners fails to take into account that there can be an additive effect between smoking and occupational exposure and fails to recognize that the effects of coal mine dust and smoking are similar in magnitude, through similar mechanisms." J.A. 210. The ALJ explained that the preamble cautions against this type of "statistical averaging" because it "may result in underestimating the effects of coal mine dust exposure." J.A. 210–11 (citing 65 Fed. Reg. at 79938–79943, 79948).

Consistent with the ALJ's characterization, the preamble does warn that "statistical averaging" can conceal the effect of coal mining on the decline in pulmonary function in individual miners. 65 Fed. Reg. at 79941. And again, while a conclusion that Dr. McSharry's opinion *directly contradicted* the preamble on this point may have been a stretch, that is not what the ALJ asserted here. Rather, the ALJ used the logic of the preamble to support his view that Dr. McSharry's statistical evidence was flawed. Our case

20

law does not forbid an ALJ from attacking an expert's opinion when there are tensions between the expert's reasoning and the preamble. In fact, "we repeatedly have held that ALJs may look to the preamble in weighing medical opinions." *Stallard*, 876 F.3d at 667. All that we require is that the ALJ "adequately explain" their reasons for discrediting evidence, which the ALJ did here. *Sea "B" Mining Co.*, 831 F.3d at 253.

Finally, the ALJ noted that "Dr. McSharry's analysis fails to acknowledge that coal mine dust exposure can be a significant contributing or aggravating factor to an impairment caused primarily by smoking." J.A. 211. But unlike the ALJ in *American Energy*, who we found to have erred when he summarily "found [the employer's] expert physicians' opinions that [the claimant] did not have legal pneumoconiosis because smoking, not coal dust, caused his respiratory impairment 'inconsistent with the Preamble,'" the ALJ here did not blithely assert that the conclusion that smoking was the sole cause of a respiratory ailment was inconsistent with the preamble. *Am. Energy*, 106 F.4th at 328. Rather, the ALJ found Dr. McSharry's failure to acknowledge that coal-dust exposure *can* aggravate "an impairment caused primarily by smoking" to be one of several reasons to discredit Dr. McSharry's opinion. J.A. 211; *see S. Ohio Coal Co.*, 128 F.4th at 820 (distinguishing *American Energy* where, as here, "the ALJ simply noted that the experts' failure to explain what evidence precluded a finding of coal-induced lung disease was one of several reasons why the ALJ found each expert unpersuasive"). We can follow the well-articulated reasoning of the ALJ in this case, and we owe deference to his judgment as to the weight to assign Dr. McSharry's opinion.

The same goes for the ALJ's decision to discredit Dr. Rosenberg's opinion. Again,

21

the ALJ provided several reasons to find that Dr. Rosenberg's "conclusions [were] based on flawed assumptions and analyses contrary to the regulations," and therefore that "his opinion [was] poorly reasoned and entitled to no probative weight." J.A. 214. The Board affirmed based on two of those reasons. While Extra Energy attacks the ALJ's additional explanations for discrediting Dr. Rosenberg's opinion, it does not argue that the Board erred by reaching only two of the ALJ's provided reasons. And our case law limits our review "to the grounds relied upon by the [Board]" in any event. *Gulf & W. Indus. v. Ling*, 176 F.3d 226, 230 (4th Cir. 1999). Accordingly, we discuss only the two rationales the Board relied on when it affirmed the ALJ's evaluation of Dr. Rosenberg's opinion.

First, in reviewing Lawson's $FEV_1/FVC$ ratio,[5] Dr. Rosenberg asserted that "[t]he magnitude in the reduction of the $FEV_1$ in comparison to the reduction in the FVC provides a basis for distinguishing between the effects of cigarette smoking and coal dust exposure," where "cigarette smoking drives the $FEV_1$ down much farther than the FVC." J.A. 143. He opined that Lawson's $FEV_1/FVC$ ratio was "entirely consistent with the effects of cigarette smoking, not coal dust." J.A. 144. The ALJ rejected this conclusion, noting that the preamble "contradicted" Dr. Rosenberg's determination "that the reduction in $FEV_1$ likely attributable to cigarette smoking is many times greater than that attributable to coal mine dust exposure," because the preamble "states that nonsmoking coal miners develop

---

[5] "Among four pulmonary function tests identified in the Labor Department's Black Lung [Benefits] Act regulations as probative of a miner's total disability, this measurement compares the amount of air that a patient can forcibly exhale in the first second of exhalation with the total amount of air the patient can exhale in a single breath." *Stallard*, 876 F.3d at 671 (citing 20 C.F.R. § 718.204(b)(2)(i)(C)).

moderate obstruction at roughly the same rate as smokers with no mining exposure, through similar mechanisms." J.A. 213.

An ALJ can discredit opinions "that are inconsistent with the . . . preamble." *Am. Energy*, 106 F.4th at 331. And we have previously affirmed an ALJ's rejection of "Dr. Rosenberg's reliance on [a claimant]'s $FEV_1/FVC$ ratio to . . . identify the specific *cause* —i.e., smoking, black lung disease, or both—of [the] disability" as "run[ning] directly contrary to the agency's own conclusions in this regard." *Stallard*, 876 F.3d at 671; *see also id.* ("ALJs are permitted to give less weight to medical opinions that draw on medical studies purporting to distinguish between smoking-induced COPD and black lung disease."). While Dr. Rosenberg opined that he "disagree[s]" with our case law on this point, J.A. 144, we will not hold the ALJ committed error when he rejected an opinion for the same reasons we have previously approved.

Second, Dr. Rosenberg stated that "emphysema related to cigarette smoking is more diffuse than emphysema due to coal dust," and that Lawson's test results "indicate[d] widespread emphysematous lung destruction related to smoking." J.A. 146–47. The ALJ concluded that "Dr. Rosenberg's suggestion that coal mine dust exposure causes only a distinct form of emphysema, and that diffuse emphysema is not caused by coal dust exposure, is inconsistent with the premises underlying the regulations" because the preamble "recognizes that the deleterious effects of smoking and coal mine dust are not mutually exclusive and occur through similar mechanisms, and that coal mine dust causes emphysema, without distinguishing among types." J.A. 213 (citing *W.B. v. Clinchfield Coal Co.*, No. BRB 07-0622 BLA, 2008 WL 2907273, at *2 (Ben. Rev. Bd. May 21, 2008)

23

(per curiam) (citing 65 Fed. Reg. at 79941)).

Extra Energy's argument for error on this point seems to be that the preamble actually does distinguish among types of emphysema by noting that "the predominant type of emphysema in coal miners is centrilobular emphysema." Opening Br. at 28. But it misreads the preamble, which cites a postmortem study of "39 coal workers and 48 non-coal worker controls dying of cardiac causes in 1979" in which centrilobular emphysema was "the predominant type observed" across *all* the decedents and "was significantly more common among the coal workers." 65 Fed. Reg. at 79941. In other words, the preamble does not say that centrilobular emphysema is the predominant type in coal miners; it says that it was the most common type of emphysema seen in *both* miners and nonminers in the cited study, and that coal miners had it at a much higher frequency than nonminers. In the absence of other reasons from Extra Energy why the ALJ's analysis on this point was flawed, we decline to substitute our judgment for the ALJ's in his decision to discredit Dr. Rosenberg in part on this basis.

## C.

Having reviewed the five medical opinions and assigned at least some weight to those of Drs. Forehand, Green, and Raj, while discrediting those of Drs. McSharry and Rosenberg, the ALJ found that the first three opinions "outweigh[ed] the flawed" latter two opinions "on the legal pneumoconiosis issue," and that therefore "the medical opinion evidence support[ed] a finding of legal pneumoconiosis." J.A. 214. Because we will not disturb the ALJ's conclusions as to the proper weight to assign each opinion, we conclude that the ALJ's overall decision on the legal-pneumoconiosis issue was supported by

24

substantial evidence and must be upheld.

## IV.

For the foregoing reasons, the ALJ's decision to award black-lung benefits to Lawson was supported by substantial evidence and consistent with applicable law. The Board therefore did not err in affirming the ALJ's decision and order, and we accordingly deny Extra Energy's petition for review.

*PETITION FOR REVIEW DENIED*