**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-1875**

CLINCHFIELD COAL COMPANY, c/o HealthSmart Casualty Claims Solutions,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; JOHNNY L. WALLACE,

Respondents.

On Petition for Review of an Order of the Benefits Review Board. (23-0318 BLA)

Submitted: September 22, 2025              Decided: December 23, 2025

Before THACKER and BERNER, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Petition for review denied by unpublished per curiam opinion.

**ON BRIEF:** Timothy W. Gresham, Kendra R. Prince, PENN, STUART & ESKRIDGE, P.C., Abingdon, Virginia, for Petitioner. Brad A. Austin, WOLFE WILLIAMS & AUSTIN, Norton, Virginia, for Respondent Johnny L. Wallace.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Clinchfield Coal Company ("Clinchfield") petitions this court for review of the Benefits Review Board's decision and order affirming the Administrative Law Judge's award of benefits to Johnny Wallace ("Wallace") under the Black Lung Benefits Act, 30 U.S.C. §§ 901-944.  We deny the petition for review.

## I.

Wallace filed this subsequent claim for black lung benefits in July 2019.[1]  The District Director issued a Proposed Decision and Order awarding benefits.  Clinchfield disputed the proposed award and requested a hearing before an administrative law judge ("ALJ").  After reviewing all the evidence, including the testimony of Wallace, the ALJ issued a decision and order awarding benefits.  The ALJ found that Wallace had a total of 13.44 years in qualifying coal mine employment and that his usual coal mine employment involved medium to heavy exertion.  The ALJ also found that Wallace had a smoking history of at least 30 pack-years, and that his smoking was ongoing at the rate of ¼ pack per day.

The pertinent medical evidence presented to the ALJ included opinions from four evaluating physicians.  Dr. Donovan Mabe conducted the Department-sponsored

---

[1] Wallace filed his initial claim for black lung benefits in October 2010, which was denied by the District Director because Wallace failed to establish that he had pneumoconiosis, that he was totally disabled from a pulmonary or respiratory impairment, or that his pneumoconiosis was caused by his coal mine work.  Because Wallace has established total disability in this subsequent claim, he has also established the requisite change in an applicable condition of entitlement.  *See* 20 C.F.R. § 725.309(c).

examination in December 2019, and Dr. Antoine Habre performed two examinations at Wallace's request in December 2021. Both physicians diagnosed Wallace with clinical and legal pneumoconiosis arising out of his coal mine employment, opined that he was totally disabled by pulmonary and respiratory impairments, and opined that his pneumoconiosis was a substantially contributing cause of his total disability. Drs. Jeffrey Sargent and Roger McSharry performed examinations at Clinchfield's request in May 2020, and October 2021, respectively. They concluded that Wallace did not suffer from clinical or legal pneumoconiosis, that he was not totally disabled by any pulmonary or respiratory impairment, and that any impairments would in any event have to be attributed to his cigarette smoking and not to his coal dust exposure.

The ALJ exhaustively discussed all the medical opinions and, ultimately, gave greater weight to the opinions of Dr. Habre and, to a lesser extent Dr. Mabe, over those of Drs. Sargent and McSharry. The ALJ found that Wallace established that he has both clinical and legal pneumoconiosis arising out of his coal mine employment, that he is totally disabled from pulmonary and respiratory impairments, and that his pneumoconiosis is a substantially contributing cause of his total disability. The Benefits Review Board ("Board") affirmed the ALJ's findings that Wallace is totally disabled from his respiratory and pulmonary impairments, that he has *legal* pneumoconiosis, and that his legal pneumoconiosis substantially contributed to his total disability. The Board did not reach the question of whether the ALJ erred in finding that Wallace also has *clinical* pneumoconiosis.

## II.

"Our review of a decision awarding black lung benefits is limited.  We evaluate the Board's legal conclusions de novo but defer to the ALJ's factual findings if supported by substantial evidence." *Island Creek Coal Co. v. Blankenship*, 123 F.4th 684, 690 (4th Cir. 2024) (cleaned up).  "Substantial evidence is more than a mere scintilla and is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id.* (cleaned up).  In determining whether the ALJ's factual determinations are supported by substantial evidence, we consider whether the ALJ analyzed all relevant evidence and adequately explained her rationale for crediting and discrediting certain evidence.  *See id.* at 690-91.  However, the "ALJ's duty of explanation is not intended to be a mandate for administrative verbosity."  *Id.* at 691 (cleaned up). The explanation is sufficient if "we understand what the ALJ did, and why [she] did it."  *Id.* (cleaned up).

## III.

"The Black Lung Benefits Act aims to provide benefits to coal miners who are totally disabled due to pneumoconiosis." *Extra Energy, Inc. v. Lawson,* 140 F.4th 138, 143 (4th Cir. 2025) (cleaned up).  In order to obtain benefits, Wallace was required to prove four elements by a preponderance of the evidence:  "(1) that he has pneumoconiosis, in either its clinical or legal form; (2) that the pneumoconiosis arose out of coal mine employment; (3) that he is totally disabled by a pulmonary or respiratory impairment; and (4) that his pneumoconiosis is a substantially contributing cause of his total disability." *American Energy, LLC v. Dir., Off. of Workers' Comp. Programs*, 106 F.4th 319, 324 (4th Cir. 2024) (cleaned up).

4

A.

The ALJ found that Wallace was totally disabled by a pulmonary or respiratory impairment based on a valid and qualifying pulmonary function test conducted on December 14, 2021, in conjunction with his evaluation by Dr. Habre, and the medical opinion evidence as a whole.[2] The ALJ credited the opinions of Drs. Mabe and Habre that Wallace was unable to perform his usual coal mine work or any gainful employment requiring similar skills, and discounted the opinions of Drs. Sargent and McSharry because they did not consider the PFT results in rendering their opinions. Although Drs. Sargent and McSharry acknowledged that the PFT result was qualifying, they believed the testing showed poor effort and was invalid, and that Wallace's pulmonary function was normal or close to normal.

Although Clinchfield has offered a single, conclusory statement that the ALJ's finding of total disability is erroneous, it provided no argument in support. *See* Fed. R. App. P. 28(a)(8)(A) (requiring that the argument section of appellant's opening brief contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *Edwards v. City of Goldsboro*, 178

---

[2] A miner is totally disabled by his respiratory or pulmonary impairment if it prevents him from performing his usual coal mine work and any gainful employment in the immediate area of his residence that requires skills or abilities comparable to those used in his prior coal mine employment. *See* 20 C.F.R. § 718.204(b)(1). In the absence of contrary probative evidence, total disability can be established by qualifying pulmonary function tests ("PFTs"), arterial blood gas tests ("ABGs"), evidence of cor pulmonale with right-sided congestive heart failure, or reasoned medical opinions. *See* 20 C.F.R. § 718.204(b)(2)(i)-(iv).

5

F.3d 231, 241 n.6 (4th Cir. 1999) ("Failure to comply with the specific dictates of this rule with respect to a particular claim triggers abandonment of that claim on appeal."). Accordingly, Clinchfield has abandoned any appeal of the ALJ's finding that Wallace is totally disabled by a pulmonary or respiratory impairment.

B.

"[C]ourts have long recognized that pneumoconiosis can take two forms:  clinical pneumoconiosis and legal pneumoconiosis." *Extra Energy*, 140 F.4th at 144 (cleaned up). "[C]linical pneumoconiosis looks for the presence of particles in the lungs and the lungs' reaction to those particles." *Id.* (cleaned up). "While clinical pneumoconiosis can, at times, be shown through x-rays, it can be difficult to prove, especially when a miner is still alive." *Am. Energy*, 106 F.4th at 325.

Legal pneumoconiosis, by contrast, "does not require evidence of particles in the miner's lungs." *Id.*  It encompasses "'any chronic lung disease or impairment and its sequela'—including, but not limited to, 'any chronic restrictive or obstructive pulmonary disease'—that 'arises out of coal mine employment.'" *Id.* (cleaned up) (quoting 20 C.F.R. § 718.201(a)(2).  "One such condition can be COPD, which includes chronic bronchitis, emphysema, and asthma." *Id.* (cleaned up).  The pulmonary disease or impairment arises out of the miner's coal mine employment if it is "significantly related to, or substantially aggravated by," his coal dust exposure.  20 C.F.R. § 718.201(b).

Accordingly, "coal mine dust exposure [need not] be the *sole* cause of the [miner's] respiratory or pulmonary impairment." *Extra Energy*, 140 F.4th at 144 (cleaned up).  "[A] miner with a smoking history is entitled to benefits if he sustains his burden of

6

demonstrating that his impairments are significantly related to, or substantially aggravated by, dust exposure in coal mine employment, even if they are also caused in part by smoking and even if it is difficult to differentiate between the effects caused by smoking and the effects caused by coal mine dust." *Id.* (cleaned up).

"The question of how we are to evaluate an ALJ's determination of the cause of pulmonary or respiratory impairments when an individual with prior coal mine employment also has a smoking history has arisen repeatedly in our case law, and we have never deviated from our normal standard of review to address it." *Id.* at 147 (collecting cases). "We defer to the ALJ's determination regarding the proper weight to be accorded competing medical evidence, and we must be careful not to substitute our judgment for that of the ALJ." *Id.* at 146 (cleaned up). "[A]n ALJ may not credit or discredit expert testimony for no reason or for the wrong reason. But at bottom, it is the role of the ALJ— not the appellate court—to resolve a battle of the experts." *Id.* at 147 (cleaned up).

The ALJ here was presented with just such a battle. Drs. Mabe and Habre diagnosed Wallace with pneumoconiosis arising out of his coal mine employment and opined that his pneumoconiosis was a substantially contributing cause of his total disability. Drs. Sargent and McSharry concluded that Wallace did not have pneumoconiosis, did not suffer from any significant pulmonary impairment, and that, even if he did, it would have to be attributed to his cigarette smoking and not to his coal dust exposure.

1.

We begin with Clinchfield's argument that the ALJ erred in crediting the opinions of Drs. Mabe and Habre to find that Wallace established that he suffers from legal

7

pneumoconiosis. More specifically, Clinchfield argues that the ALJ erred by failing to acknowledge and address that Drs. Mabe and Habre based their opinions on an exaggerated length of coal mine employment and a minimized cigarette smoking history. But this is simply not so.

Dr. Mabe completed his evaluation in December 2019. He diagnosed Wallace with legal pneumoconiosis based on his coal dust exposure, his symptoms of shortness of breath and cough with black sputum production, and his COPD and restrictive lung disease. He also opined that Wallace's coal mine dust exposure was a substantially contributing cause of his pulmonary impairments. However, Dr. Mabe was under the mistaken belief at the time that Wallace had a history of 16 years of coal mine dust exposure and a 5-pack year smoking history. For this reason, the ALJ gave Dr. Mabe's opinion reduced weight. Instead, the ALJ based her finding solely upon her decision to credit the opinion of Dr. Habre over the contrary opinions of Drs. Sargent and McSharry.

Dr. Habre conducted two examinations of Wallace in December 2021, which included the valid and qualifying PFT that the ALJ relied upon in finding that Wallace has a pulmonary impairment that renders him totally disabled. Although Dr. Habre's initial reports indicated that Wallace had 16 years of underground coal mining employment and no history of smoking, Dr. Habre was always aware that Wallace was an ongoing smoker, based upon the results of his ABGs. And prior to rendering his final opinions, Dr. Habre was made aware that the agency had calculated Wallace's history of qualifying coal mine employment at 13 years and that Wallace had a greater than 30-year smoking history. After adjusting for the accurate years of coal dust exposure and smoking, and considering the

8

entire clinical picture, Dr. Habre diagnosed Wallace with emphysema and chronic bronchitis, acknowledged that Wallace's ongoing tobacco use contributed to his symptoms, and concluded that Wallace's exposure to coal dust played a substantial role in causing the decline in his pulmonary capacity and his disabling impairment. More specifically, Dr. Habre testified that Wallace's history of coal dust exposure had worsened his emphysema, causing further decline in his lung function and aggravating his pulmonary symptoms. As Dr. Habre explained, this clinical history included the length of Wallace's coal mine employment, the type of mining work Wallace performed (*i.e,* "face work" in the mines as a roof bolter involving substantial levels of exposure), his smoking history, his chest x-ray findings, his positive PFT results, the stronger clinical picture of his chronic bronchitis and clinical symptoms, and the known synergistic negative effect of these two etiologies. Based upon Dr. Habre's understanding of Wallace's symptoms, his occupational and smoking histories, and the objective tests, the ALJ gave Dr. Habre's opinion probative weight and found that Wallace had met his burden of proving the existence of legal pneumoconiosis.

Accordingly, we reject Clinchfield's premise that the ALJ erred because she failed to acknowledge or address inaccurate coal dust exposure and smoking histories provided to Drs. Mabe and Habre. The ALJ did not rely upon Dr. Mabe's opinion because it was based on inaccurate information and Dr. Habre did not rely upon an inaccurate coal mine employment history or a minimized smoking history. Moreover, we hold that the ALJ exhaustively considered the expert opinions and adequately explained why she gave Dr. Habre's opinion dispositive weight.

9

2.

Clinchfield also argues that the ALJ erred in discrediting the opinions of Drs. Sargent and McSharry and improperly shifted the burden of proof to Clinchfield to disprove legal pneumoconiosis.

As an initial premise, we note that Clinchfield did not directly challenge the ALJ's decision to *discredit* the opinions of Drs. Sargent and McSharry in its appeal to the Board, and the Board affirmed the ALJ's credibility decisions for this reason. Before us, Clinchfield does not argue that it made that challenge to the Board and does not argue that the Board erred in affirming the ALJ's credibility findings on this basis. Accordingly, Clinchfield abandoned this argument.

In any event, we find no error. The ALJ exhaustively discussed and considered the opinions of Drs. Sargent and McSharry in the same manner and to the same extent that she considered the contrary opinions of Drs. Mabe and Habre, and she adequately explained why the opinions of Clinchfield's experts were only entitled to limited weight. Both physicians opined that Wallace has no significant pulmonary or respiratory impairment and does not have legal pneumoconiosis. As the ALJ observed, however, both physicians premised their opinions on their belief that Wallace had no valid PFT or ABG results and, therefore, no evidence of significant lung disease—contrary to the ALJ's now unopposed finding that the December 14, 2021, PFT supported a finding that Wallace was totally disabled from respiratory and pulmonary impairments. In addition, both physicians relied, at least in part, on their view that Wallace had no positive x-ray finding which, even if true, does not rule out a diagnosis of legal pneumoconiosis.

10

We are also unpersuaded by Clinchfield's argument that the ALJ improperly discredited Dr. McSharry's opinion because she referenced the Preamble to the black lung regulations and noted that Dr. McSharry had failed to address the question of whether Wallace's coal mining may have impacted his pulmonary impairment. *See* Preamble to the Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, 65 Fed. Reg. 79920, 79941 (Dec. 20, 2000).

"We have repeatedly held that an ALJ is permitted to consult the [P]reamble when determining whether to credit a physician's medical opinion on the existence of pneumoconiosis or the cause of a miner's disabling respiratory impairment." *Am. Energy*, 106 F.4th at 331. And "[o]ur case law does not forbid an ALJ from attacking an expert's opinion when there are tensions between the expert's reasoning and the [P]reamble." *Extra Energy*, 140 F.4th at 152-53. "All that we require is that the ALJ adequately explain [her] reasons for discrediting evidence, which the ALJ did here." *Extra Energy*, 140 F.4th at 153 (cleaned up). The ALJ did not discredit Dr. McSharry's opinion because it was inconsistent with the Preamble or discredit Dr. McSharry's opinion solely because he did not address the question of how Wallace's coal dust exposure may have impacted his pulmonary impairment. Rather, the ALJ found that Dr. McSharry's failure to address the known additive effects of smoking and coal dust exposure was one of several reasons to discredit it. *See Extra Energy*, 140 F.4th at 153 (rejecting similar claim because the ALJ "did not blithely assert that the [expert's] conclusion that smoking was the sole cause of a respiratory ailment was inconsistent with the [P]reamble" but instead found that it was "one of several reasons to discredit [the expert's] opinion). Accordingly, we conclude that the

11

ALJ permissibly used the Preamble as guidance when assessing the credibility of Dr. McSharry's opinion. *See Extra Energy*, 140 F.4th at 147 (outlining permissible use of Preamble in assessing black lung claims).[3]

3.

Having considered the entire record, we hold that the ALJ's lengthy, detailed order reflects her careful analysis of all relevant medical opinions, each of the expert's credentials, the medical evidence upon which they relied, and their conclusions. The ALJ adequately explained her rationale for crediting the opinion of Dr. Habre over the contrary opinions of Drs. Sargent and McSharry and properly evaluated the contradictory medical opinions in a manner consistent with this court's precedent. The ALJ's determination that Wallace met his burden of proving the existence of legal pneumoconiosis is supported by substantial evidence and is in accordance with the law. And because the ALJ's finding that Wallace has established legal pneumoconiosis is supported by substantial evidence, he also satisfied the second element of his claim. *See Am. Energy*, 106 F.4th at 325 ("A miner who satisfies the first element of his claim by establishing legal pneumoconiosis

---

[3] We likewise find no merit to Clinchfield's argument that the ALJ erred in relying upon Dr. Habre's opinion, and in not crediting the opinions of its experts instead, due to the lapse of time between Wallace's coal mine employment and his first abnormal PFT. *See* 20 C.F.R. § 718.201(c) (noting that "'pneumoconiosis' is recognized as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure."). This too is simply an argument that the ALJ should have credited Clinchfield's experts, who opined that the time gap was too long, over the other two experts, who opined that it was not.

necessarily satisfies [the] second element [because,] by definition, legal pneumoconiosis arises out of coal mine employment.").[4]

## C.

Clinchfield's final claim is that the ALJ erred in finding that Wallace's pneumoconiosis substantially contributed to his total disability. "[P]neumoconiosis is a substantially contributing cause of a miner's total disability if it '[h]as a material adverse effect on the miner's respiratory or pulmonary condition' or '[m]aterially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment.'" *Am. Energy*, 106 F.4th at 325 (quoting 20 C.F.R. § 718.204(c)(1)).

The ALJ's finding that Wallace established the presence of legal pneumoconiosis, (*i.e.*, his COPD, emphysema, and chronic bronchitis) and is totally disabled by his pulmonary impairments, largely dovetails with her finding that his legal pneumoconiosis is a substantially contributing cause of his total disability. *See Am. Energy*, 106 F.4th at 326 (noting that in some cases, "a miner's establishment of legal pneumoconiosis may . . . satisfy not only the first and second elements of his claim, but also this fourth element

---

[4] Clinchfield also sought to appeal the ALJ's finding that the preponderance of the chest x-ray evidence established the existence of simple pneumoconiosis. The Board did not consider this argument and only affirmed the ALJ's determination that Wallace had legal pneumoconiosis that substantially contributed to his total disability. Because the Board did not consider the clinical pneumoconiosis argument, and we deny the petition for review based upon the Board's decision, we do not address this argument nor is remand to the Board for further proceedings necessary. *See Extra Energy*, 140 F.4th at 153 ("[O]ur case law limits our review to the grounds relied upon by the Board.") (cleaned up).

13

because the definition of legal pneumoconiosis expressly encompasses certain conditions arising out of coal mine employment that can be totally disabling, such as COPD.").

In determining that Wallace proved that he had legal pneumoconiosis and that his pneumoconiosis substantially contributed to his total disability, the ALJ credited the opinion of Dr. Habre, and to a lesser extent Dr. Mabe, and adequately explained why they were entitled to probative weight. Wallace's total disability resulted from his COPD and emphysema, both of which were made significantly worse by his coal dust exposure. The ALJ also adequately explained why she credited these opinions over those of Drs. Sargent and McSharry. In addition to the reasons the ALJ already gave for discrediting the opinions of Clinchfield's experts, discussed above, the ALJ found no specific and persuasive reason for concluding that their causation opinions did not rest upon their opinion that Wallace does not have legal pneumoconiosis in the first place. *See Toler v. Eastern Assoc. Coal Co.*, 43 F.3d 109, 116 (4th Cir. 1995)("[A]n ALJ who has found . . . that a claimant suffers from pneumoconiosis and has total pulmonary disability may not credit a medical opinion that the former did not cause the latter unless the ALJ can and does identify specific and persuasive reasons for concluding that the doctor's judgment on the question of disability causation does not rest upon her disagreement with the ALJ's finding as to either or both of the predicates in the causal chain."). Accordingly, we hold that the ALJ's finding that Wallace met his burden to prove causation is also supported by substantial evidence and is in accordance with law.

14

IV.

For the foregoing reasons, we hold that the ALJ's decision to award black lung benefits to Wallace was supported by substantial evidence and is consistent with applicable law. The Board did not err in affirming the ALJ's decision and order, and we accordingly deny Clinchfield's petition for review. We dispense with oral argument because the facts and legal conclusions are adequately presented in the materials before this court and argument would not aid the decisional process.

*PETITION FOR REVIEW DENIED*